**ACE LINES, INC., Plaintiff,**

v.

**UNITED STATES of America and the Interstate Commerce Commission, Defendants.**

**Civ. No. 4–992.**

United States District Court
S. D. Iowa.
Jan. 27, 1960.

James R. Austin, Ralph R. Randall and Dick A. Witt, Des Moines, Iowa, for plaintiff.

Robert A. Bicks, Acting Asst. Atty. Gen., James H. Durkin, Attorney, Department of Justice, Washington, D. C., Robert W. Ginnane, General Counsel, Arthur J. Cerra and Carroll T. Prince, Jr., Asst. General Counsel, Interstate Commerce Commission, Washington, D. C., for defendants.

Before VAN OOSTERHOUT, Circuit Judge, DELEHANT and VAN PELT, District Judges.

VAN OOSTERHOUT, Circuit Judge.

This action is brought by Ace Lines, Inc. (hereinafter Ace), under §§ 1336, 2284 and 2321 to 2325 of Title 28 U.S. C.A., to restrain, annul, enjoin, and set aside a report and orders of the Interstate Commerce Commission dated December 31, 1958, and July 6, 1959, entered in Docket No. MC–C–2134, Ace Lines, Inc., Investigation and Revocation, reported at 78 M.C.C. 523.

Pursuant to statute, this case came on for final hearing before a duly designated three-judge District Court on the 30th day of November, 1959. This court has jurisdiction over this case.

The complete record made before the Commission, including all reports and orders, was introduced in evidence. The case was orally argued by respective counsel, written briefs were filed, and the case was submitted.

Ace holds certificate of convenience and necessity No. MC–52751, authorizing it to transport over irregular routes within geographical limitations not herein dispute various commodities including "building materials".

The dispute which arises is whether certain items transported by Ace are beyond the scope of the "building mate-

rials" transportation authorized by its certificate. The Interstate Commerce Commission, Division I, pursuant to Sections 204(c) and 212(a) of the Interstate Commerce Act (49 U.S.C.A. §§ 304 (c) and 312(a)), instituted an investigation to determine whether Ace "is or has been transporting commodities not authorized by its certificate of public convenience and necessity, in violation of Section 206(a) of the Act, with the view to the entry, if such violation is found, of an appropriate order to compel plaintiff to refrain from further violation under penalty of revocation of its certificate."

The shipments claimed to be beyond the scope of Ace's authority to transport are listed in the appendix to the Commission's report. 78 MCC at page 529.

A hearing was had before a hearing examiner. The parties appeared at such hearing and introduced evidence. The hearing examiner filed a report, finding that Ace was transporting certain of the listed commodities in violation of 206(a) of the Act, and recommended that the Commission enter an order requiring Ace to cease and desist from the operations found to be unlawful. Exceptions to the examiner's report were filed by Ace and by the Bureau of Inquiry and Compliance. The report and order of the Commission, Division I, issued December 31, 1958, as revised by the order of the full Commission upon reconsideration dated July 6, 1959,[1] finds and concludes that Ace's certificate:

> " * * * insofar as it authorizes the transportation of building materials, does not authorize the transportation of steel bars, flats; steel bars, reinforcing; steel bars, rounds; annealed wire; galvanized steel wire; plain steel wire; and welded fabric, unless at the time of transportation they are without further processing or manufacture, in a form and condition to be used in

the construction or repair of a building and are at such time intended with reasonable certainty to be so used; and that to the extent that respondent has engaged in the transportation of those commodities as set forth in the appendix, with the exception of those listed in items 4, 5 and 6 therein, such transportation has been beyond the scope of its authority, and was unlawful.

> "An order will be entered requiring respondent to cease and desist from all operations in interstate or foreign commerce of the character herein found to be unauthorized and unlawful."

Ace in its complaint claims that the order of the Commission is erroneous, arbitrary, capricious, and an abuse of discretion, for reasons stated in substance as follows:

1. The Commission incorrectly interpreted the words "building materials" as used in Ace's certificate to mean only materials transported for use in buildings, whereas such words should be interpreted as being synonymous with construction materials.

2. The Commission, in arriving at its conclusion, erroneously relied upon a prior, unrelated proceeding, i. e., Descriptions in Motor Carrier Certificates, 61 MCC 209, and in particular upon Appendix VI thereof, purporting to contain a list of articles under the commodity description "building materials."

3. The method prescribed by the Commission for using the Descriptions list, i. e., authorizing transportation of commodities on the list providing there is no knowledge of an intended use other than as a building material, renders the list unreliable because Ace is unable to determine the meaning of the word "knowledge" as used in the Commission's report.

4. The Commission's report and order mingles and confuses the application of

---

1. The full Commission on rehearing removed steel bar angles from the conditionally prescribed items because such item is included in the Descriptions case list.

various tests and fails to make sufficient explication to enable Ace to determine with a fair degree of assurance just what character of operation is unlawful.

As a foundation for our consideration of the errors urged, we shall consider the scope of judicial review of orders of the Interstate Commerce Commission.

■ It now seems to be well settled that in a suit to enjoin enforcement of an I.C.C. order, the three-judge court is governed by the scope of review provisions of the Administrative Procedure Act. (5 U.S.C.A. § 1009(e)). E. g., Minneapolis & St. Louis Ry. v. United States, 361 U.S. 173, 80 S.Ct. 229, 4 L.Ed. 2d 223; Riss & Co. v. United States, 341 U.S. 907, 71 S.Ct. 620, 95 L.Ed. 1345; Schaffer v. United States, D. C., 139 F. Supp. 444.

The relevant portions of § 1009(e) are as follows:

"So far as necessary to decision and where presented the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of any agency action. It shall * * * (B) hold unlawful and set aside agency action, findings, and conclusions found to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; (5) unsupported by substantial evidence in any case * * * reviewed on the record of an agency hearing provided by statute; * * *".

In Nelson v. United States, 355 U.S. 554, at page 558, 78 S.Ct. 496, at page 499, 2 L.Ed.2d 484, the Supreme Court states:

" * * * the ordinary meaning of the words used in the permit is determinative. In ascertaining that meaning, we are not given carte blanche; just as '[t]he precise delineation of an enterprise which seeks the protection of the "grandfather" clause has been reserved for the Commission.' Noble v. United States, 319 U.S. 88, 93 [63 S.Ct. 950, 952, 87 L.Ed. 1277] (1943), subsequent construction of the grandfather permit by the Commission is controlling on the courts unless clearly erroneous. Dart Transit Co. v. Interstate Commerce Comm'n, [D. C.,] 110 F.Supp. 876, aff[irme]d, 345 U.S. 980, [73 S.Ct. 1138, 97 L.Ed. 1394] (1953)."

In Dart Transit Co. v. Interstate Commerce Commission, D.C., 110 F.Supp. 876, 880, the court, speaking through Judge Sanborn, states:

"It is our opinion that in an action such as this, a court may not substitute its judgment for that of the Commission with respect to the question of the scope or coverage of a permit which the Commission has issued to a motor carrier, if that question is at all doubtful. * * *

"In the interest of uniformity in the regulation and policing of the motor carrier industry, it is of course essential that the Commission be subjected to as little judicial interference as the law will permit."

In Malone Freight Lines v. United States, D.C., 107 F.Supp. 946, 949, affirmed 344 U.S. 925, 73 S.Ct. 497, 97 L.Ed. 712, the court says:

"Our function does not involve a de novo construction of the certificate or a re-evaluation of the undisputed facts relating to the services being performed under the pretended warrant of its authority. We are not concerned with the weight of the evidence. The scope of our review is necessarily confined to the interpretation placed by the Commission upon a certificate of its own creation. We are bound by that interpretation unless we are persuaded that it was capricious or arbitrary,

that it constituted an abuse of discretion, or that it did violence to some established principle of law. It is beyond our province to consider 'the soundness of the reasoning by which its conclusions were reached' ".

■ From the foregoing authorities, it is apparent that courts are required to respect the expert knowledge of the Commission in the interpretation field and that courts should set aside orders made by the Commission only when such orders are shown to have been induced by prejudicial departure from legal standard or when such decision is arbitrary or the result of an abuse of discretion.

The Commission in its report states "a grant of authority limited to 'building materials' is one denoting a class of commodities which may be described or identified by reference to the use to be made thereof." ' Identification of certificate authority to transport commodities by reference to the intended use of such commodities is a technique frequently used by the Commission and approved by the courts. Nelson v. United States, supra; Dart v. I.C.C., supra.

We will now consider the specific errors raised in the light of the general principles just stated,

Ace contends that the Commission erroneously construed the words "building materials" too narrowly and that "building materials" should be construed as the equivalent of construction materials and should include any materials intended for use in any type of structure, including bridges, highways, or airport runways.

Ace cites a number of state court decisions dealing with tax and zoning problems, in which a building has been construed to include bridges, water towers, radio towers, and the like. Ace further contends that the language in R. N. B. Converse Extension, 66 MCC 607, Point Pleasant Transportation Co., Inc., 61 MCC 666, Descriptions in Motor Carriers Certificates, 61 MCC 209, and Carroll Trucking Co., 52 MCC 178, supports its contention.

The certificate in Converse covered construction materials. The certificate in Carroll covered structural steel. Neither case involved the construction of the words "building materials."

The Descriptions case and the Point Pleasant case, when considered in their entirety, afford no support for Ace's position, but rather support the interpretation made by the Commission.

The Descriptions case involves a general and extensive investigation by the Commission in an attempt to clarify the scope of transportation authority of carriers holding certificates containing commodity description limitations. Building materials was one of the commodity descriptions covered. Many carriers and shippers participated in this case, and much expert testimony was received and considered. The Commission states in its report, at page 256:

" 'Building' has been defined as that which is built; as generally used, a fabric or edifice, framed or constructed, designed to stand more or less permanently, and covering a space of land for use as a dwelling, storehouse, factory, a shelter for beasts or some other useful purpose."

Substantially the same definition appears in Webster's New International Dictionary, Second Edition.

The Commission continues:

"Building materials, as the term implies, embraces all those commodities which go into the erection of all types of buildings. It includes those materials necessary to complete the building, that is, those articles which are to become a permanent part thereof. It does not include those articles which are not a part of the building, such as furniture, furnishings, portable fans, and drinking fountains, assembled refrigerators, and the like. It does not embrace mechanics' tools or equipment used for the construction of the building, such as paint brushes, but does include paint. As

used herein, a bridge would not be a building and consequently the material used therein would not be included in the term 'building materials'."

Attached to the report, at pages 279 to 283, is a very extensive list of commodities which in the Commission's opinion fall within the description of "building materials."

Ace offered the testimony of an architect as an expert witness. Such testimony tended to show that the witness considered the commodities here in controversy to be building materials. However, it is apparent that the witness considered building materials to be the equivalent of construction materials. In any event, the Commission was not bound by the expert's testimony. The Commission has an expert knowledge of its own upon the subject matter here involved, as a result of its intensive study made in the Descriptions case, and on other occasions.

In National Labor Relations Board v. Seven-Up Co., 344 U.S. 344, 349, 73 S.Ct. 287, 290, 97 L.Ed. 377, the Supreme Court said:

> " * * * But in devising a remedy the Board is not confined to the record of a particular proceeding. 'Cumulative experience' begets understanding and insight by which judgments not objectively demonstrable are validated or qualified or invalidated. The constant process of trial and error, on a wider and fuller scale than a single adversary litigation permits, differentiates perhaps more than anything else the administrative from the judicial process. '[T]he relation of remedy to policy is peculiarly a matter for administrative competence. * * *' Phelps Dodge Corp. v. [National] Labor [Relations] Board, supra, 313 U.S. [177] at [page] 194, [61 S.Ct. 845, 85 L.Ed. 1271]. That competence could not be exercised if in fashioning remedies the administrative agency were restricted to

considering only what was before it in a single proceeding."

■ It is within the discretionary power of the Commission to determine the weight to be accorded to the testimony of any witness, expert or otherwise. Watson Bros. Transp. Co., Inc. v. United States, D.C., 59 F.Supp. 762 at page 768; Loving v. United States, 10 Cir., 32 F.Supp. 464, 467, affirmed 310 U.S. 609, 60 S.Ct. 898, 84 L.Ed. 1387.

■ We are satisfied that the Commission's interpretation of the words "building materials" is not arbitrary or capricious, and that the Commission reached a permissible conclusion in making the interpretation that it did.

Ace contends the Commission erred in giving consideration to the Descriptions case and the list of building materials appearing in Appendix VI thereof. It is undisputed that Ace's certificate predated the Descriptions case and that the Commission in that case stated, "This proceeding would be restricted to certificates to be issued to motor common carriers of property; that any order herein would apply only to future certificates."

■ Any rights acquired by Ace by its certificate could not be taken away by the Descriptions case. Rights under the certificate must be determined as of the date of the issuance of the certificate.

The Supreme Court in Nelson v. United States, supra, footnote 4, 355 U.S. at pages 558 and 559, 78 S.Ct. at page 499, 2 L.Ed.2d 484, states:

> "It is true, of course, that limitations on Commission power to modify motor carrier permits, established in § 212(a) of the Act, cannot be by-passed under a guise of interpretative action. Commission interpretation of the meaning of a permit, being simply a definitive declaration of what rights existed from the very beginning under the permit, cannot be equated with modification, however, unless found to be clearly erroneous."

In order to determine the use made by the Commission of the Descriptions case, we must look to its report which states:

" * * * we are of the opinion that the articles described as 'building materials' in appendix VI to the report in the Descriptions case, supra, hereinafter called the building materials list, may properly be given consideration. Although the operating authority here involved predates that decision, the lists of commodities set forth therein were based upon a study of the various fields of industry and transportation and of the usual meanings given in such fields to the specified commodities, and therefore are entitled to considerable weight in defining the commodities descriptions used in past grants of authority."

■ The above quotation and the report as a whole satisfy us that the Commission was only attempting to determine Ace's rights under its certificate as they had existed from the beginning, and was not using the Descriptions case to modify or restrict any pre-existing rights. The Commission committed no error in using the Descriptions case to aid it in interpreting Ace's certificate rights as they existed from the inception of the certificate. Nelson v. United States, supra; Sims Motor Co. v. United States, D.C., 183 F.Supp. 113.

While the Commission in its report in the present case does not use the word "actual" preceding the word "knowledge", we are satisfied that the Commission permits the shipment of any commodity upon the Descriptions list applicable to the transportation authority granted in the certificate, unless the carrier had actual knowledge that the commodity shipped was to be used for a different purpose. The Commission, in the Point Pleasant Transportation case, 61 MCC 666, cited in our present case, specifically holds that a carrier may transport commodities predominately used in the activity for which the certificate authorizes transportation, unless he has actual knowledge that a different

use of the commodity is intended. We feel quite certain that the Commission would not depart from the actual knowledge standard without making a specific statement to that effect and assigning reasons for the change. Any other course would entrap certificate holders. Moreover, counsel for Commission in their written brief and in oral argument stated that the type of knowledge involved in the foregoing situation is actual knowledge.

Finally, we reach Ace's contention that the order is erroneous, arbitrary and capricious because the Commission has failed to make sufficient explication to enable Ace to determine just what character of operation is unlawful. This contention presents a difficult problem. There is merit to Ace's contention that the Commission in its report mingles and confuses the application of various conflicting tests. The Commission, at page 526 of its report, states:

" * * * We conclude that respondent, under its presently held authority to transport 'building materials' is authorized to transport any commodity included in the building materials list established in the Descriptions case without specific inquiry as to its intended future use provided it does not at the time of movement have knowledge of an intended use other than as a building material, and that in addition it may transport any commodity not included in the list in the Descriptions case provided it is affirmatively established that such commodity at the time of movement is intended for use as a building material."

This test gives Ace the right to carry any item on the lengthy Descriptions list of building materials, provided it has no actual knowledge that any commodity to be transported is to be used for any other purpose than as a building material, and additionally gives Ace the right to transport any commodity it can affirmatively establish was intended at the time of transportation for use as building material.

Since the Descriptions list came into existence after Ace's certificate, we have serious doubt whether the list can be the exclusive measure of what commodities are "building materials" within the meaning of Ace's certificate. The Commission has conceded that the commodity description list is not controlling on the construction of pre-existing certificates. Bell Motor Freight Extension, 61 MCC 569.

The Commission has recognized that the commodity list may not be complete and may require revision from time to time, and that a commodity might fit a commodity description even if it is not included in the Descriptions list. Obviously, with scientific progress, new products will be developed which will meet a commodity description. We do not believe that it can fairly be said that the Commission's report shows that it found Ace to be in violation solely because the commodity transported was not one included in the building materials list in the Descriptions case.

In determining what commodities may be transported by the application of the intended use technique to various commodity classifications, the Commission has used various tests to determine what commodities presumptively meet the classification. In Albert Greenberg Investigation, 52 MCC 387, the Commission permitted transportation without investigation of articles "which are suitable for virtually no other use" except in the classification covered by the certificate.

The Commission liberalized its test somewhat in Point Pleasant Transportation Co., stating at page 669:

"After careful consideration of all of the factors involved, we think that the principle announced in the Greenberg case should be expanded somewhat in order to relieve the carrier of some of its burden in predetermining the use to be made of the articles tendered for shipment. As to those commodities the predominant use of which is confined to a particular activity, we are of the opinion that the carrier is justified in making an assumption that they will be used in that line of work, and that it may accept all shipments offered without making an investigation as to the actual use to be made thereof. As an example, certain grades of lumber are predominantly used as building materials, and we think a carrier may rightly assume that lumber of that type tendered to it for transportation will be so utilized. Of course, such an assumption would not obtain if there were actual knowledge on the part of the carrier that any particular load of lumber was to be used otherwise. * * *"

In Roy Stone Transfer Co., 71 MCC 651, 654, the Commission apparently modifies the predominate use test, stating:

"The so-called predominate use test, as applied to operating authorities which identify the commodities to be transported by reference to their intended future use, was formulated in the last-cited proceeding. However, its application is limited by its very terms to those commodities which have virtually no other use than in the particular activity specified in the considered authority, and then provided, of course, that the carrier does not have knowledge that the particular commodities to be transported are not to be so used. Moreover, it is fundamental that a carrier may transport only those commodities which at the time of transportation are, without further processing or manufacture, in a form or condition to be used in the particular activity specified in the authority and are at the time of transportation intended with reasonable certainty to be so used."

It is obvious from what has just been said that the Commission has not been consistent in describing the tests that are to be applied to determine whether

the commodity meets the commodity description.

■ An administrative body, such as the Commission, is not bound by the rule of stare decisis, and inconsistency of its holding with prior holdings in and of itself does not make the decision arbitrary. F. C. C. v. WOKO, Inc., 329 U.S. 223, 228, 67 S.Ct. 213, 91 L.Ed. 204; Virginian Railway Co. v. United States, 272 U.S. 658, 665, 666, 47 S.Ct. 222, 71 L.Ed. 463; Northern Pac. Ry. Co. v. United States, D.C., 41 F.Supp. 439, 446.

■ The primary responsibility for interpreting certificates and determining what items fall within a commodity description contained in a certificate rests in the Interstate Commerce Commission. It is for the Commission rather than the courts to select and apply the tests to be used in determining what commodities fall within a commodity description. If the Commission's action in these respects is not arbitrary or capricious or the result of an abuse of discretion, or induced by an erroneous view of the law, the court should not interfere. Judged by these standards, we believe the Commission's order here under attack must be upheld. Ace has failed to establish that the Commission's order is arbitrary or clearly erroneous.

The Commission found item 6, steel bar angles, on the descriptions list and therefore held that there was no violation as to the transportation of such item. It also found no violation as to items 4, 5, and 6, because of insufficiency of supporting evidence.

The Commission properly determined that none of the other items claimed to have been transported unlawfully were covered by the descriptions list. However, the Commission did not rest its decision upon such finding alone. The Commission proceeded to apply various tests to the commodities transported, including the "predominate use" test and the "virtually no other use" test. As to reinforcing bars and welded fabric, the Commission found that such commodities were extensively used in the construction of highways, airport runways, dams and bridges, and were not commodities which have "virtually no other use than in the particular activity specified in the considered authority."

As to the remaining items claimed to be transported beyond the scope of Ace's authority, the Commission found there was no evidence as to the predominate use of such commodities and that they were in fact used for many purposes.

It is established beyond dispute that all of the shipments found to be in violation went to persons not engaged in building, shipments being made to manufacturers of tractors and power shovels, telephone companies, and contractors engaged in bridge construction.

If Ace is required by the Commission's cease and desist order to follow all the conflicting and varying rules set out in the report used by the Commission as a basis for arriving at its result, and is compelled to guess which rule governs, there would be merit to its contention that the order is not sufficiently explicit. However, as we read the Commission's report and order, the transportation which the Commission found to be beyond the scope of Ace's certificate authority to transport building materials, and hence unlawful, is clearly stated in the language heretofore quoted at page 593 of this opinion. The transportation found unlawful is that involving steel bars, flats; steel bars, reinforcing; steel bars, rounds, annealed wire; galvanized steel wire, plain steel wire, and welded fabric, in shipments detailed in items 1, 2, and 3, and 7 to 12 inclusive, of the appendix, to persons not engaged in building and not intending to use such materials in building.

The order entered pursuant to the report requires Ace "to cease and desist from the performance of any operation in interstate or foreign commerce of the character found in said report to be unlawful."

We conclude that there was a factual and legal basis for the Commission's order; that the order clearly is not errone-

ous, arbitrary, capricious, or the result of any abuse of discretion on the part of the Commission.

This memorandum opinion shall constitute the court's findings of fact and conclusions of law, as provided by rule 52(a) of the Rules of Civil Procedure, 28 U.S.C.A.

Judgment will be entered vacating the restraining order heretofore entered, and dismissing the complaint.