**KROBLIN REFRIGERATED XPRESS, INC., Plaintiff,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants.**

**KROBLIN REFRIGERATED XPRESS, INC., Substituted Plaintiff,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants.**

Civ. Nos. 928, 932.

United States District Court
N. D. Iowa, E. D.
July 27, 1961.

William B. Mooney, Waverly, Iowa, Harold G. Hernly, Charles W. Singer, Washington, D. C., and Truman Stockton, Jr., Denver, Col., for plaintiff Kroblin Refrigerated Xpress, Inc.

James Y. Piper, Washington, D. C., for defendants. U. S. and Interstate Commerce Commission.

Before VAN OOSTERHOUT, Circuit Judge, and GRAVEN and STEPHENSON, District Judges.

STEPHENSON, District Judge.

These actions were instituted against the United States of America and the Interstate Commerce Commission, pursuant to the provisions of Sections 1336, 1398, 2284, and 2321–2325, Title 28 U.S. C.A.; and Section 10 of the Administrative Procedure Act, 5 U.S.C.A. § 1009, to enjoin, annul and set aside certain orders of the Interstate Commerce Commission (hereinafter called the Commission). Civil No. 932 involves an order of the Commission finding that plaintiff's predecessor-in-interest, Heuer Truck Lines, Inc., (hereinafter called Heuer) was not authorized to transport fresh meats pursuant to the commodity description "groceries" contained in its certificate and ordering Heuer to cease and desist from such transportation.

Civil No. 928 involves orders of the Commission denying two applications by the plaintiff for extensions of its existing motor carrier authorities to include fresh meat on the grounds that plaintiff, Kroblin Refrigerated Xpress, Inc. (hereinafter called Kroblin) had failed to establish it was fit and able to receive the extensions of authority for which applications had been filed.

These two actions were consolidated for purposes of briefs, arguments and disposition herein. However, they will be discussed separately.

### Civil–932

This proceeding was docketed before the Commission as No. MC–C–1587, Heuer Truck Lines, Inc.,—Revocation of Certificate, reported in 66 M.C.C. 47. It was

instituted by the Commission on its own motion in an investigation proceeding instituted pursuant to Sec. 204(c) of the Interstate Commerce Act, 49 U.S.C.A. § 304(c), and resulted in an order by the Commission that the plaintiff's predecessor-in-interest, Heuer, cease and desist from the performance of operations found not to be authorized by Heuer's certificate, namely transporting fresh meats, the Commission having interpreted the commodity term "groceries", contained in the motor carrier certificate, now held by Kroblin, as not including "fresh meats." [1]

Initially a hearing was held before an individual Commissioner. Thereafter a report was issued by what was then Division 5 of the Commission, finding that Heuer's authority to transport groceries did not authorize the transportation of fresh meats, and ordering Heuer to cease and desist from such transportation. Petitions for reconsideration were filed by Heuer and an intervener, and were denied by the Commission. Heuer then brought an action in the United States District Court for the Southern District of Iowa to set aside the orders of the Commission on the ground, among other things, that, contrary to the requirements of the Administrative Procedure Act, an initial or recommended decision had not been made by the officer who presided at the hearing. As a result, the Commission vacated its prior orders and referred the proceeding back to the Commissioner who presided at the hearing for an issuance of an initial decision. Heuer then dismissed the district court action.

On August 2, 1955, the hearing Commissioner served his initial decision which was practically a verbatim copy of the fifth Division's report. After exceptions were filed by Heuer, Division one issued the report and order presently complained of, finding that the term "groceries" as used in Heuers' certificate

means "articles for human consumption which are customarily served as food, except fresh meats", that Heuer's transportation of fresh meats to, from or between points which it could serve in the carriage of "groceries" was unauthorized, and that a cease and desist order should be entered in accordance therewith.

Heuer then filed a petition for reconsideration and further hearing which was denied by the Commission, whereupon Heuer instituted the present action.

At the request of the parties, this matter was continued by the District Court for the Southern District of Iowa, pending disposition by the Commission of Heuer's application in No. MC–30844 (Sub. No. 25) in which Heuer sought specific authority to transport "fresh meats" in the territory covered by Heuer's existing "groceries" authority. (This authority was ultimately denied by the Commission in proceedings complained of in Civil–928 discussed infra.)

Plaintiff seeks relief from the orders of the Commission on the following grounds:

(1) That the Commission's definition of "groceries" as used in plaintiff's certificate is arbitrary, erroneous and lacking in any rational basis.

(2) That the Commission's action in denying plaintiff's petition for reconsideration and for further hearing was arbitrary, capricious and in abuse of its discretion.

(3) That the Commission's proceeding in Docket No. MC–C–1587 was violative of Sec. 8 of the Administrative Procedure Act, 5 U.S.C.A. § 1007.

We direct our attention to the first ground presented. It is well settled that the construction of the scope of certificates issued by the Commission is within the province of the Commission and will not be overturned unless caprici-

---

1. The authority in question in the plaintiff's certificate is as follows: "Canned goods and groceries, between points and places in Iowa, on the one hand, and points and places in Oklahoma, Missouri, Kansas, Colorado, Nebraska, Arkansas, Texas, Ohio, Indiana, (except Indianapolis), and those in the part of Illinois on and south of U. S. Highway 36, on the other."

ous, arbitrary or clearly erroneous. Andrew G. Nelson, Inc. v. United States, 1958, 355 U.S. 554, 78 S.Ct. 496, 2 L.Ed. 2d 484; United Truck Lines v. Interstate Commerce Commission, 9 Cir., 1951, 189 F.2d 816, certiorari denied 342 U.S. 830, 72 S.Ct. 54, 96 L.Ed. 628; Ace Lines, Inc. v. United States, D.C.S.D.Iowa 1960, 197 F.Supp. 591.

In Andrew G. Nelson, Inc. v. United States, supra, 355 U.S. at page 558, 78 S.Ct. at page 499, the Supreme Court stated:

"In ascertaining that meaning (of words in a commodity description), we are not given *carte blanche;* just as '/t/he precise delineation of an enterprise which seeks the protection of the "grandfather" clause has been reserved for the Commission,' Noble v. United States, 1943, 319 U.S. 88, 93, 63 S.Ct. 950, 952, 87 L.Ed. 1277, subsequent construction of the grandfather permit by the Commission is controlling on the courts unless clearly erroneous. Dart Transit Co. v. Interstate Commerce Comm., D.C., 110 F.Supp. 876 (D.Minn. 1953), affirmed, 345 U.S. 980, 73 S.Ct. 1138, 97 L.Ed. 1394 (1953)."

In Dart Transit Co. v. Interstate Commerce Commission, supra, the Court, speaking through Judge Sanborn, stated at page 880 of 110 F.Supp.:

"It is our opinion that in an action such as this, a court may not substitute its judgment for that of the Commission with respect to the question of the scope or coverage of a permit which the Commission has issued to a motor carrier, if that question is at all doubtful. * * * In the interest of uniformity in the regulation and policing of the motor carrier industry, it is of course essential that the Commission be subjected to as little judicial interference as the law will permit."

This principle is further illustrated by the decision in Ace Lines, Inc. v. United States, supra, 197 F.Supp. 599 where the Court said:

"The primary responsibility for interpreting certificates and determining what items fall within a commodity description contained in a certificate rests in the Interstate Commerce Commission. It is for the Commission rather than the courts to select and apply the tests to be used in determining what commodities fall within a commodity description. If the Commission's action in these respects is not arbitrary or capricious or the result of an abuse of discretion, or induced by an erroneous view of the law, the court should not interfere."

■ From the foregoing authorities it is clear that the courts are required to respect the findings and conclusions of the Commission in interpreting certificates and the court should not set aside orders made by the Commission unless the orders are shown to have been capricious, arbitrary, an abuse of discretion or in violence to some established principle of law.

■ Initially Kroblin contends that the Commission's definition of "groceries" as "articles for human consumption which are customarily served as food or which are used in the preparation of food, except fresh meats" is arbitrary, erroneous and lacking in any rational basis. It further contends that there can be no justification other than administrative expediency to except from this general definition one and only one prominent food category, "fresh meats", in that the commonly accepted meaning of the term "groceries" includes fresh meats. The plaintiff contends that there is no more reason for excluding fresh meats from the classification of groceries than for excluding such items as fresh vegetables or frozen foods, which are now included in the Commission's definition of groceries, as there are exclusive vegetable markets as well as exclusive meat markets and that frozen foods and vegetables likewise require special service in handling during transportation. On the other hand, the Commission contends that because there are

exclusive meat markets and because fresh meats require a specialized handling in transportation therefore there is a logical reason for excluding fresh meats from the general classification of groceries.

The Commission further contends that at the outset the court should consider the fact that there was nothing new or novel in the construction applied by the Commission to the term "groceries" in plaintiff's operating certificate. The Commission points out that this same definition excepting fresh meats was set forth and approved in a reported case as far back as 1948. In Hazelwood Extension-Packing House Products, 49 M.C.C. 53 at page 57 the Commission stated:

> "Our Bureau of Motor Carriers has informally expressed the opinion that groceries include any article for human consumption which is customarily served as food or as a substance entering into the preparation of foods in the home, except fresh meats * * *. In our opinion a permit authorizing the transportation of groceries does not include authority to transport fresh meats for meat-packing houses * * *."

The same administrative construction of "groceries" was given specific judicial approval by the court in Bird Trucking Co. v. United States, D.C.W.D.Wis.1955, 159 F.Supp. 717, 720–721, where it was stated:

> "Therefore, the Commission was acting clearly within its powers in defining 'groceries,' when appearing as an item in operating authorities, to include 'any article for human consumption which is customarily served as food, or is a substance entering into the preparation of food in the home, except fresh meats.' We cannot say as a matter of law this definition is arbitrary or clearly erroneous."

See also, Bonney Motor Express, Inc.—Norfolk and Suffolk, Va., 71 M.C.C. 589, 592 (1957).

The Commission therefore contends that as well as consistently giving the term "groceries" the construction here attacked, within the transportation industry itself, the transportation of fresh meats has traditionally been regarded as a separate business from the transporting of groceries. The Commission contends that for years the "grocery store" and "meat market" were separate and distinct entities, and that the "groceries" came to connote the foods sold in grocery stores except fresh meats. Certainly the modern supermarket carries fresh meat as well as many items formerly found only in hardware and drug stores. Many carriers now, operating under proper authorization give complete service to grocery stores. Such authority is not contained in a certificate to transport groceries alone. The merchandising history of canned, smoked and cured meats may be somewhat confusing. The Commission contends that all three types of meats were carried by grocery stores exclusive from and/or in conjunction with the meat markets, and that by the time fresh meats were found in the modern supermarkets, they were already established in the transportation industry as a distinct and separate commodity. As such, they were not automatically included in the term "groceries" merely because they were sold in grocery stores. Considering these arguments as a whole, it cannot by any matter be said there is no rational basis whatsoever to support the interpretation of the Commission.

An alternative contention of the plaintiff is that the Commission should have applied the "intended use test" to the term "groceries", thereby authorizing transportation of fresh meats as long as their intended use is in a grocery store. The plaintiff points out that the Commission has previously vacillated between interpreting a commodity description as a generic term or as an intended use type of description comparing Descriptions in Motor Carrier Certificates, 61 M.C.C. 209, 257 with Point Pleasant Transp. Co., Inc., —Declaratory Order, 61 M.C.C. 666, as to the commodity description "building materials." In "Descriptions" this term was referred to as a generic term while in "Point Pleasant" it was found to be an "intended use" description.

The Commission argues that the intended use test is not applicable to the commodity description "groceries" in that that term is readily identifiable by what it is, rather than by the use to which it will be put, and that the term has always had a well-defined meaning within the transportation industry. In any event, the Commission argues, the Court need not be concerned with this argument of plaintiff unless it finds that the Commission had no rational basis for defining the term "groceries" as was indicated supra, it did have.

█ After thorough consideration of these various contentions of the Commission and the plaintiff, the Court acknowledges that different meanings can be attached to the term "groceries" as a commodity description but, where a commodity description is subject to a difference of opinion as to its scope, it is clearly within the province of the Commission to make the determination and interpretation. This Court cannot say that the Commission acted arbitrarily or capriciously in determining that the term "groceries" excluded fresh meats. The fresh meat industry has become a vast and important segment of our economy; it is, in itself, a large industry. The burden is upon the plaintiff to establish that the Commission acted arbitrarily and without any rational basis in establishing the classification complained of, and it has failed to meet that burden. Therefore, the action of the Commission cannot be said to be arbitrary, capricious, or the result of any abusive discretion on its part.

█ The next ground urged for relief from the Commission's actions by the plaintiff is that the Commission acted arbitrarily, capriciously and in abuse of its discretion in denying plaintiff's petition for reconsideration and for further hearing. Plaintiff contends that in view of Bird Trucking Co. v. United States, D.C.W.D.Wis.1955, 159 F.Supp. 777, and Salvino v. United States, D.C.W.D.Wash. 1954, 119 F.Supp. 277, plaintiff should have been allowed a further hearing for the purpose of presenting evidence as to whether the meaning of the term "gro-

ceries", as applied to Heuer's certificate, should be revised, and whether the certificate should be modified to include fresh meats on the basis of Heuer's operations during the grandfather period. In the event a grandfather permit does not properly reflect the scope of a carrier's grandfather operations, the carrier's remedy lies in petitioning the Commission to reopen the grandfather proceedings. Andrew G. Nelson, Inc. v. United States, 1958, 355 U.S. 554, at page 561, 78 S.Ct. 496, at page 500, 2 L.Ed.2d 484, where the Supreme Court stated:

"Finally, appellant contends that the Commission's interpretation limits the actual—though previously unasserted—scope of grandfather operations carried on by appellant's predecessor, thus subverting the substantial parity which a grandfather permit should establish between pre-Act and post-Act operations. Alton R. Co. v. United States, 315 U.S. 15 [62 S.Ct. 432, 86 L.Ed. 586] (1942). If this be so, the remedy lies elsewhere, and in the event the grandfather permit does not correctly reflect the scope of the grandfather operation, the carrier's recourse is to petition the Commission to reopen the grandfather proceedings for consideration of the evidence not previously brought to the Commission's attention. *Such a contention is no answer to the present charge of permit violation, since the permit cannot be collaterally attacked.* Callanan Road Improvement Co. v. U. S., 345 U.S. 507 [73 S.Ct. 803, 97 L.Ed. 1206] (1953); Interstate Commerce Comm's v. Consolidated Freightways, Inc., [D.C.] 41 F.Supp. 651. To hold otherwise would render meaningless the congressional requirement of a permit to continue grandfather operations subsequent to the Act." (Emphasis added.)

█ Here neither the plaintiff nor its predecessor has ever sought a correction of its commodity description or a modification of its grandfather certificate. The Commission properly refused to consider evidence of Heuer's grandfather rights in

the petition for rehearing. We find no abuse in discretion of the Commission in refusing plaintiff's petition for further hearing.

The final ground urged by the plaintiff for relief from the Commission's order is that the proceedings in Docket No. MC–C–1587 were violative of Sec. 8 of the Administrative Procedure Act, 5 U.S.C.A. § 1007, for the reason that the Hearing Commissioner's initial report was practically a verbatim copy of the original Commission's report, which was vacated and thus did not comply with this section which provides in part as follows:

"(a) Action by Subordinates.—In cases in which the agency has not presided at the reception of the evidence, the officer who presided * * shall initially decide the case or the agency shall require * * * the entire record to be certified to it for initial decision. * * * Whenever the agency makes the initial decision without having presided at the reception of the evidence, such officers shall first recommend a decision * * *."

The plaintiff argues that even though the matter was referred back for an initial report, and such report was issued by the Hearing Commissioner it is not a true "initial report" as contemplated by Sec. 8 of the Administrative Procedure Act on the ground that it did not represent the independent judgment and opinion of the officer presiding at the initial hearing, since it was substantially identical to the Commission's report.

■■ This Court cannot say that it was necessary for the hearing officer to rewrite the Commission's earlier report if the same reflected his findings and conclusions. The purpose of requiring an initial report appears not to be merely blind obedience to an administrative technicality, but rather to make certain that adequate notice will be given the parties concerned. As stated in Western Union Division, Commercial Telegraphers' Union, A. F. of L. v. United States, D.C.D.C. 1949, 87 F.Supp. 324, at page 334, affirmed 338 U.S. 864, 70 S.Ct. 148, 94 L. Ed. 530:

"The purpose of the cited provisions of the Administrative Procedure Act, supra, (including 5 U.S. C.A. 1007) is to insure procedures by which parties may be fully informed of the issues and proposed grounds of decision and be afforded full opportunity to be heard upon these issues and grounds."

In the case of Southern Railway Company v. United States, D.C.E.D.Va.1959, 180 F.Supp. 189, Circuit Judge Sobeloff succintly states at page 195:

"The Congressional purpose in enacting the Administrative Procedure Act was not to exact a form of literary exercise from administrative bodies, but to insist on sufficient disclosure; * * * *"

In the instant case the plaintiff was sufficiently apprised of the grounds upon which the initial decision rested to enable it to lodge exceptions and objections to the Commissioner's findings. The Commission's proceeding in Docket No. MC–C–1587 was not violative of Sec. 8 of the Administrative Procedure Act.

Therefore, the relief requested by the Plaintiff in Civil–932 is hereby denied.

### Civil–928

Kroblin's predecessor, Heuer, filed application for extension of service for the hauling of fresh meats on November 9, 1954 and April 9, 1956 (designated Sub Nos. 25 and 28). These proceedings were consolidated before the Interstate Commerce Commission and carried Docket No. MC–30844. In both cases the Commission found that the public convenience and necessity required the proposed service, and on June 26, 1956, in the Sub No. 25 proceedings, one of the Commissioners authorized the issuance of a certificate to Heuer for an extension of its service. Later, but before a certificate was issued, the entire Commission reopened the proceedings for further hearing "solely for the purpose of determining the fitness, willingness and ability of the applicant (Heuer) properly to perform the proposed service." Before a certificate was issued, Kroblin, having purchased Heuer, was substituted as applicant before the Com-

mission, and on July 16, 1958, Division 1 of the Commission found that Kroblin satisfactorily met the issue of fitness. However, before a certificate was issued, Division 1 reopened their proceedings "for further hearing solely for the purpose of determining the fitness, willingness, and ability of applicant Allen E. Kroblin, Incorporated, to render the proposed service." On July 24, 1959, Division 1 of the Commission entered its report and order denying both the application in Sub 25 and 28 (Sub No. 28 having been consolidated with Sub No. 25) on the ground that "the substituted applicant, Allen E. Kroblin, Incorporated, had failed to establish that it is fit and able properly to conduct the proposed operations and to conform to the requirements of the Interstate Commerce Act and our rules and regulations thereunder."

The plaintiff contends herein:

(1) That said order of July 24, 1959, was arbitrary, capricious, unlawful and not based on substantial evidence.

(2) That later orders of the Commission entered November 25, 1959, and June 8, 1960, denying plaintiff's petitions for reconsideration and for further hearing in said proceedings were arbitrary, capricious and unlawful.

Section 207(a) of the Interstate Commerce Act, 49 U.S.C.A. § 307(a), the statute which authorizes the issuance of motor carrier operating authorities to common carriers, provides in part as follows:

"Subject to section 210, a certificate shall be issued to any qualified applicant therefor, authorizing the whole or any part of the operations covered by the application, if it is found that the applicant is fit, willing, and able properly to perform the service proposed and to conform to the provisions of this part and the requirements, rules, and regulations of the Commission thereunder, and that the proposed service, to the extent to be authorized by the certificate, is or will be required by the present or future public convenience and necessity; otherwise such application shall be denied: * * * "

■ It is therefore incumbent upon the Commission to make two findings before the issuance of a certificate, namely, (1) fitness of the applicant and (2) public convenience and necessity.

The plaintiff concedes that the Commission may deny extensions where the carrier is found unfit, but complains in this instance that the evidence of operational unfitness covered only a five-month period shortly after Kroblin took over from Heuer, and that the violations, which are listed in Exhibit 157, were comparatively trivial in view of the large operation of Kroblin and were therefore not sufficient grounds for a finding of unfitness. Appendix I is a compilation of discovered violations of safety regulations by the plaintiff found during the course of 21 road checks conducted during the period from June 16, 1958 to December 3, 1958. (Appendix also includes a citation of regulations for convenience). Of the 27 Kroblin vehicles inspected in these checks, it appears that 21 of them were not in compliance with one or more of the requirements of the Motor Carrier Safety Regulations, and in nine of these inspections the vehicles were so imminently hazardous as to be placed "out of service" pursuant to 49 C.F.R. Sec. 196.5.[2] Plaintiff contends such violations should be considered in light of the fact that they

2. 49 C.F.R. Sec. 196.5 provides in part:
No motor carrier shall permit or require a driver to drive nor shall any driver drive any motor vehicle which by reason of its mechanical condition is so imminently hazardous to operate as to be likely to cause an accident or a breakdown and which motor vehicle, because of such condition, has been declared and marked "out of service" with the prescribed sticker by an authorized employee of this Commission. Such motor vehicle shall not be operated until the repairs required by the "out of service notice" on Form BMC 63 have been satisfactorily completed and the "out of service" sticker removed. No person shall remove the "out of service" sticker from such motor vehicle prior to the completion of the required repairs.

covered only a brief period of time when Kroblin was attempting to integrate the newly acquired Heuer operations into Kroblin. However, the regulations make no exception for such situations.

In addition to the violations of safety regulations, the Commission found that the applicant had been hauling soap in violation of its operating authority which did not include this commodity. Kroblin complains that it was not aware that Heuer had been warned that his operating authority did not authorize the transportation of soap; however, it is apparent from the record that as early as September 17, 1958, the Commission's District Supervisor warned Kroblin that the transportation of soap and soap products was not authorized by its certificate, but that Kroblin continued to transport soap for over a year thereafter and did not discontinue these operations until November 1, 1959, which was after the Commission had specifically ordered Kroblin to cease.

Although it is not within the province of this Court to substitute its judgment for that of the Commission, it is necessary for us to inquire as to whether or not the findings of the Commission are supported by substantial evidence. United States v. Pierce Auto Freight Lines, Inc., 1946, 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821; Associated Transports, Inc. v. United States, D.C. E.D.Mo.1958, 169 F.Supp. 769. After reviewing the record herein, we cannot say that the Commission's finding is not supported by substantial evidence. Likewise, this Court cannot find under all the circumstances that the violations by the plaintiff were trivial or should be excused. Even though we might not necessarily agree with the Commission's finding that the reported violations are sufficiently severe so as to warrant a denial of plaintiff's application for extension of service if we were called upon to decide the case de novo, we cannot say that the action of the Commission is not supported by the evidence or that its action was arbitrary and unreasonable. As stated in Federal Communications Comm. v.

WOKO, Inc., 1946, 329 U.S. 223, at page 229, 67 S.Ct. 213, at page 216, 91 L.Ed. 204:

"And the fact that we might not have made the same determination on the same facts does not warrant a substitution of judicial for administrative discretion since Congress has confided the problem to the latter. We agree that this is a hard case, but we cannot agree that it should be allowed to make bad law."

The burden is on the applicant to prove its fitness, 5 U.S.C.A. § 1006(c), and there is ample evidence in the record here to support the Commission's finding that the applicant failed to establish its fitness.

The Commission has cited 38 of its reported decisions where it has denied an application for extension of service on the ground of the unfitness of the applicant. After a review of these cases it appears to the Court that the Commission is becoming more stringent as to its requirements of fitness. These cases demonstrate that the plaintiff is not the only carrier who has been so strictly dealt with by the Commission. It cannot be said that adequate warning was not given by the Commission, as it stated in Miller and Cahill Common Carrier Application, 30 M.C.C. 737, 742 (1941):

"Accordingly, we have heretofore generally adhered to the rule that although evidence of violations of the act may be considered in determining the fitness of the applicant to perform the proposed service, it is not an absolute bar to the granting of the authority sought. * * * It may be, however, that in the near future we shall, in the light of several years of administration of the provisions of the act, with ample opportunity on the part of motor carriers to familiarize themselves therewith, adopt a more strict and inflexible rule to the effect that evidence of unlawful operations renders an applicant unfit properly to perform the services for which authority

is sought and precludes a grant of authority therefore."

This "more strict and inflexible rule" was adopted as long ago as 1952 in Lesoine Extension—Coal, 61 M.C.C. 77 (1953), where at page 85 the Commission stated:

"We are convinced that the time for adoption of the more strict and inflexible rule forecast in Miller and Cahill Common Carrier Application, 30 M.C.C. 737, 742 (1941) is long overdue."

See also Kunau Extension—Fertilizer, 61 M.C.C. 482 (1953).

Plaintiff further contends that the Commission's orders of November 25, 1959 and June 8, 1960, denying plaintiff's application for reconsideration were arbitrary and capricious and an abuse of discretion since the Commission reopened Sub Nos. 37 and 38 (proceedings independent of the ones here in issue) for further hearings on the issue of fitness while denying its request for reopening in Sub Nos. 25 and 28 on the issue of fitness.

It is well established that the granting of a petition for rehearing or for further hearing is a matter falling entirely within the discretion of the Commission and that the Commission's determination thereon will not be upset except on a clear showing of abuse of discretion. United States v. Pierce Auto Freight Lines, Inc., supra; I.C.C. v. Jersey City, 1944, 322 U.S. 503, 64 S.Ct. 1129, 88 L. Ed. 1420.

The fact that the Commission reopened Sub Nos. 37 and 38 does not necessarily indicate an arbitrary and inconsistent position being taken on the part of the Commission. Upon a review of the record herein the Court can find no such clear showing of abuse of discretion on the part of the Commission in denying plaintiff's request for reconsideration and rehearing.

For these reasons the relief requested by the plaintiff in Civil–928 is hereby denied.

This memorandum shall constitute the Court's findings of fact and conclusions of law, as provided by Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.

Judgment will be entered dismissing the complaint.

## Appendix I

### Citations of Commission Regulations Involved in Violations

| Date, Time, and place of inspection | Citations of Regulations in 49 C.F.R. |
| --- | --- |
| 6–16–58, 11:25 AM, Baldwin Junction Kansas | |
| Placard on right torn off | 207.1; 207.4(d) |
| Other placard of heavy paper—No registry number | 207.1; 207.4(d) |
| 2 batteries below reefer not covered | 193.1; 193.30 |
| Audible leak in tubing on hand valve line in front of fire wall | 193.1; 193.46(b) |
| Only 2 fusees | 193.1; 193.95(f)(1) |
| Upper rear clearance lamp knocked off | 193.1; 193.14(b); 193.25(a); 192.7; 196.2 |
| Brake hoses to front diaphram crossed and rubbing | 193.1; 193.45(c) |
| Out of Service 6631 | 196.1; 196.5 |

Citation of Commission Regulations Involved in Violations

| Date, Time, and place of inspection | Citations of Regulations in 49 C.F.R. |
|---|---|
| 6–16–58, 9 PM, S. Kyle, Texas | |
| Tractor protection valve not operating by manual or automatic means | 193.1; 193.43(a) |
| Tractor stop light not operating | 193.1; 193.13(b); 193.25(d); 192.7; 196.2 |
| Tractor tail light not operating | 193.1; 193.13(b) 193.25(c); 192.7; 196.2 |
| Fire extinguisher empty for two days | 193.1; 193.95(a); 192.8 |
| 6–18–58, 3:10 PM, North Platte, Neb. | |
| Audible leak in service line (repaired during check) | 193.1; 193.46(b) |
| 6–19–58, 3:10 PM, Jackson, Michigan | |
| Audible air leak under tractor in line and leaking brake chamber on right rear of tractor | 193.1; 193.46(b) |
| Out of Service 24838 | 196.1; 196.5 |
| 6–19–58, 6:55, Mason City, Iowa | |
| Approx. 45 lbs. air pressure loss in 3 minutes, brakes applied, engine at idle speed | 193.1; 193.43(a) |
| Out of Service 8184 | 196.1; 196.5 |
| 6–19–58, 3:15 PM, Victory Junction, Kansas | |
| Shattered windshield right side | 192.1; 192.9(c); 193.1; 193.60; 196.1; 196.4 |
| Brake hoses chafing against cab | 193.1; 193.45(c) |
| 7–18–58, 2:30 PM, Abilene, Texas | |
| 20 lbs. per minute air leak in application line to rear chambers (Repaired by driver) | 193.1; 193.43(a) |
| Excess travel in steering drag link | 192.1; 192.7; 196.1; 196.4 |
| Fire extinguisher not mounted | 193.1; 193.95(a); 192.1; 192.8 |
| Last log entry 12 Midnight 7–15–58, transporting cleaning compound from Chicago, Ill. to Odessa, Texas | 195.1; 195.8(a), Instr. 1 |

## Citation of Commission Regulations Involved in Violations

| Date, Time, and place of inspection | Citations of Regulations in 49 C.F.R. |
|---|---|
| 8–8–58, 11:50 AM, Springdale, Arkansas | |
|   Not showing daily mileage on logs | 195.1; 195.8(a), Instr. 7 (b) |
|   Fire extinguisher not full | 193.1; 193.95(a); 192.1; 192.8 |
|   Stop light on tractor out | 193.1; 193.13(b); 193.25(d); 192.7; 196.2 |
|   Lens broken on trailer tail light | 193.1; 193.14(b); 193.25(a); 192.7; 196.2 |
| 8–20–58, 9:15 AM, Hannibal, Missouri | |
|   Air line rubbing and chafing on frame and gear housing | 193.1; 193.45(c) |
|   Carrying 3 fusees on propane fueled refrigerator motor | 192.1; 192.8; 192.25; 193.1; 193.95(f)(4) |
|   Air hoses chafing on front axle lines of trailer | 193.1; 193.45(c) |
| 8–20–58, 3:20 PM, Carthage, Missouri | |
|   Leak in glad hand connection box | 192.1; 192.7; 193.1; 193.46(b) |
|   Windshield cracked | 192.1; 192.9(c); 196.1; 196.4 |
|   Out of Service 17088 | 196.1; 196.5 |
| 9–17–58, 12:15 PM, Cameron, Missouri | |
|   4 of 8 trailer tires smooth, 1 tread showing | 192.1; 192.7; 193.1; 193.75(c) |
|   Right rear trailer brakes inoperative (blocked off) | 192.1; 192.7; 193.1; 193.40; 193.48; 196.1; 196.4 |
|   Last log 9–13–58, 11 PM | 195.1; 195.8(a), Instr. 1 |
|   No written authorization for wife as passenger | 192.1; 192.60 |
|   Brakes on steering axle of 2 axle tractor do not hold | 192.1; 192.7; 193.1; 193.40; 193.48; 196.1; 196.4 |
| Out of Service 7899 | 196.1; 196.5 |

## Citation of Commission Regulations Involved in Violations

| Date, Time, and place of inspection | Citations of Regulations in 49 C.F.R. |
| --- | --- |
| 10-2-58, 3:20 PM, Des Moines, Iowa | |
| No log entry since 12:15 noon 10-1-58 | 195.1; 195.8(a), Instr. 1 |
| Unable to place parking brake in on position and have it remain on | 192.1; 192.7; 193.1; 193.40; 193.41; 193.48; 196.1; 196.4 |
| Tractor stop light dead | 193.1; 193.13(b); 193.-25(d); 192.1; 192.-7; 196.1; 196.2 |
| Tractor tail light dead | 193.1; 193.13(b); 193.25 (c); 192.1; 192.7; 196.1; 196.2 |
| Out of Service 39126 | 196.1; 196.5 |
| 10-6-58, 9:05 PM, Des Moines, Iowa | |
| Right front brake chamber on tandem tractor leaking | 192.1; 192.7; 193.1; 193.-46(b) |
| No right side rear clearance light on trailer | 193.1; 193.14(c); 193.25 (a) |
| No log book | 195.1; 195.8(a), Instr. 1 |
| 10-6-58, 6 PM, Hope, Arkansas | |
| Brake hose from tractor chafing on trailer frame | 193.1; 193.45(c) |
| 10-7-58, 2 PM, Strongsall, Ohio | |
| Slight air leak on tractor | 193.1; 193.46(b) |
| No flares, reflectors, lanterns | 193.1; 193.95(f) |
| No flags and standards | 193.1; 193.95(f) |
| 10-7-58, 10:30 AM, Chester, Nebraska | |
| No identification on tractor— cardboard signs inside of cab without serial numbers | 207.1; 207.4(d) |
| No written authorization for passenger-brother of driver | 192.1; 192.60 |
| Logs do not show daily mileage or point of each change of duty status | 195.1; 195.8(a) Instr. 7(b) & 7(f) |
| 2 red clearance lamps at middle of each side of trailer | 193.1; 193.14(c) 193.25(e)(2); 192.1; 192.7 |
| No windshield wiper blade on right side | 192.1; 192.7; 193.1; 193.78(a) |

## Citation of Commission Regulations Involved in Violations

| Date, Time, and place of inspection | Citations of Regulations in 49 C.F.R. |
| --- | --- |
| Audible leak in right tractor brake chamber | 193.1; 193.46(b) |
| Has 4 cans of fluid, about 12 ozs. each, for fire extinguisher | 192.1; 192.8; 193.1; 193.95(a) |
| Stop lamp on tractor does not light on brake application | 192.1; 192.7; 193.1; 193.13(b); 193.25 (d) |
| Parking brake handle does not hold in on position | 192.1; 192.7; 193.1; 193.40; 193.41; 193.48 |
| Only one reflector | 193.1; 193.95(f); 192.1; 192.8 |
| No flags or standards | 192.1; 192.8; 193.1; 193.95(f); 193.95 (k) |
| Cracked brake drum on rear right inside trailer wheel | 192.1; 192.7; 196.1; 196.4 |
| All four trailer brake hoses crossed and chafing | 193.1; 193.45(c) |
| Out of Service 8567 and 8568 | 196.1; 193.5 |
| 10–8–58, 1:25 PM, Charles City, Iowa | |
| No drivers log | 195.1; 195.8(a), Instr. 1 |
| No physician certificate | 191.1; 191.10 |
| Right side windshield wiper inoperative | 192.1; 192.7; 193.1; 193.78(a) |
| No air brake warning device | 193.1; 193.51 |
| Inoperative parking brake | 192.1; 192.7; 193.1; 193.40; 193.41; 193.48 |
| 10–8–58, 10:05 AM, Victory Junction, Kansas | |
| Left outside tire on front trailer duals worn thru 8 plies of fabric | 192.1; 192.7; 193.1; 193.75(c) |
| Right rear brake drum on trailer axle cracked completely across face of drum | 192.1; 192.7; 196.1; 196.4 |
| Brake hoses to trailer chafed | 193.1; 193.45(c) |
| Out of Service 7950 | 196.1; 196.5 |

## Citation of Commission Regulations Involved in Violations

| Date, Time, and place of inspection | Citations of Regulations in 49 C.F.R. |
|---|---|
| **10–9–58, 1:40 PM, Corydon, Iowa** | |
| Right windshield wiper inoperative | 192.1; 192.7; 193.1; 193.78(a) |
| Trailer right rear brake chamber leaking | 193.1; 193.46(b) |
| No rear end protection | 193.1; 193.86 |
| Out of Service 23112 | 196.1; 196.5 |
| **11–20–58, 11:25 AM, Whiting, Indiana** | |
| Last log entry, 12 Midnite 11–18–58 | 195.1; 195.8(a), Instr. 1 |
| No copy of lease or certificate on unit | 207.1; 207.4(a)(7); 207.4(d)(2) |
| Fuel tanks, using gasoline, are not spill proof | 193.1; 193.65(e)(1); 193.65(j)(5) |
| No windshield wiper motor on right | 192.1; 192.7; 193.78(a) |
| Parking brake will not stay in applied position | 192.1; 192.7; 193.1; 193.40; 193.41; 193.48 |
| Air leak at trailer brake connection in cab. Repaired by driver | 193.1; 193.46(b) |
| Battery not covered | 193.1; 193.30 |
| Trailer brake hoses at front crossed and chafing | 193.1; 193.45(c) |
| **12–3–58, 9:30 AM, Wahoo, Nebraska** | |
| No drivers log | 195.1; 195.8(a), Instr. 1 |
| Vehicle not identified— placards in cab | 207.1; 207.4(d) |
| Electrical connections top trailer torn loose | 193.1; 193.28; 193.33 |
| Rear trailer brake hoses chafing | 193.1; 193.45(c) |