Laverne W. SIMPSON, d/b/a Mid-Seven Transportation Company, Des Moines, Iowa, Plaintiff,

v.

UNITED STATES of America and Interstate Commerce Commission, Defendants,

and

Matson, Inc., an Iowa Corporation, Intervenor.

Civ. No. 4-1146.

United States District Court
S. D. Iowa,
Central Division.

Dec. 30, 1961.

ton, D. C., for defendants United States and Interstate Commerce Commission.

William N. Dunn, Eldora, Iowa, for intervenor.

Before VAN OOSTERHOUT, Circuit Judge, and STEPHENSON and GRAVEN, District Judges.

GRAVEN, District Judge.

This is an action brought pursuant to Sections 1336, 2284, and 2321–2325 of Title 28 U.S.C.A., to restrain, annul, enjoin, and set aside a cease and desist order of the Interstate Commerce Commission (hereinafter the Commission) dated February 21, 1961, entered in Docket No. MC-C-1775. That order, reported in 84 M.C.C. 463, requires the plaintiff herein to cease and desist from any operations in interstate commerce of the character found in said report of the Commission to be unlawful. The precise operations which were found to be unlawful by the Commission involve the transportation by plaintiff of sixteen enumerated iron and steel commodities under certificates of public convenience and necessity authorizing the transportation of "structural steel" between designated points. The Commission has ruled in the order referred to that the plaintiff's certificates insofar as they authorize the transportation of structural steel do not authorize the transportation of the sixteen commodities listed and that transportation of such commodities in the past, purportedly pursuant to the authority granted in said certificates, has been at all times unlawful. A temporary restraining order was issued in this cause by Judge Roy L. Stephenson on May 12, 1961, and on May 22, 1961, the Commission issued an order postponing the compliance date of the cease and desist order until further order of the Commission.

On June 2, 1961, Matson, Inc., an Iowa corporation, was allowed by the Court to intervene in support of the plaintiff. The Intervenor is a motor carrier which, like plaintiff, holds a certificate of public convenience and necessity from the Commission authorizing

D. C. Nolan, Iowa City, Iowa, and William N. Dunn, Eldora, Iowa, for plaintiff.

Roy W. Meadows, U. S. Dist. Atty., Des Moines, Iowa, and Francis A. Silver, Associate Gen. Counsel for Interstate Commerce Commission, Washing-

the transportation of "structural steel" between designated points. Since the Intervenor allegedly transports many of the same steel commodities which the Commission has determined are not authorized by the commodity description "structural steel," it has a substantial interest in the outcome of the present controversy.

The plaintiff, Laverne W. Simpson, doing business as Mid-States Transportation Company (now Mid-Seven Transportation Company), Des Moines, Iowa, holds certificates of public convenience and necessity Nos. MC–16831 and MC–16831 (Sub. No. 4). The former certificate, issued June 9, 1949, authorizes plaintiff to transport structural steel, brick, and heating equipment over irregular routes between Des Moines and points in Iowa, Minnesota, South Dakota, Nebraska, Illinois, Wisconsin, and Kansas. The latter certificate issued March 21, 1950, authorizes the transportation by plaintiff of the same commodities to and from certain points within a radius of twelve miles from Des Moines.

It has been stipulated that plaintiff has transported and continues to transport among other things the following items: (1) steel tees, zees and angles; (2) steel forgings; (3) steel sheets, strips and plates; (4) steel lathing and grounds; (5) wrought pipe; (6) iron bolts and nuts; (7) steel channels; (8) steel washers; (9) steel forms used and re-used for concrete construction; (10) steel tubing; (11) steel rings, rough; (12) steel beams; (13) reinforcing bars; (14) steel stampings; (15) steel bars, round and flat; (16) steel wire; (17) steel rivets; (18) steel welding rods; (19) steel screws; (20) steel bolts and nuts. From among the items listed above, only steel tees, zees and angles; steel channels; and steel beams were found to be structural steel under the final determination of the Commission.

The proceedings before the Commission in the present case have extended over a six-year period and are rather extensive. On February 23, 1955, Division Five of the Commission entered, on its own motion, an order instituting an investigation into the operations of plaintiff to determine whether he was transporting unauthorized commodities in violation of Section 206(a) of the Interstate Commerce Act, 49 U.S.C.A. § 306(a). Pursuant to this investigation, a hearing was held in Des Moines on October 4 and 5, 1956. At this hearing, both the Bureau of Inquiry and Compliance of the Commission and the plaintiff called expert witnesses who testified as to the meaning generally accorded the term "structural steel" within the trade and industry and also as to the specific application of that description to each of the twenty items or groups of items in question. As a result of this hearing, the hearing examiner issued a report and recommended order in which he found that plaintiff had been and was engaged in transporting commodities in violation of the terms of his certificate. Of the twenty categories set forth above, the hearing examiner found that only three constituted structural steel. He specifically found that fourteen of the items in question did not constitute structural steel and that transportation of such items by plaintiff was not authorized. As to three of the items, apparently no finding or recommendation was made.

Plaintiff's exceptions to the hearing examiner's report and order were reviewed by Division One of the Commission which issued a report on October 3, 1957 (73 M.C.C. 75) in which it found that plaintiff's certificates authorized the transportation of all but six of the above enumerated iron and steel commodities transported by plaintiff. On January 20, 1958, the proceeding was reopened for reconsideration on the existing record. On July 6, 1959, Division One affirmed the findings in its prior report. 81 M.C.C. 98. On the petition of the plaintiff, the Commission on March 21, 1960, again reopened the proceeding for further consideration. This time the matter was heard before the entire Commission. The entire Commission, after reconsidering the case on the ex-

isting record, modified the prior reports of Division One and entered the order of February 21, 1961, heretofore referred to, in which it found, as had the hearing examiner, that only three items among those currently being transported by the plaintiff were properly included in the commodity description "structural steel" appearing in plaintiff's certificates. It listed sixteen items [1] from among the twenty items in question which it found were not authorized by that commodity description and accordingly issued the cease and desist order which is herein challenged.

■ Before considering the errors urged in respect to the Commission's order, it seems desirable to consider the scope of judicial review to be accorded such orders. The interpretation of certificates issued by the Commission is primarily the responsibility of the Commission and the latter's action is not to be overturned unless capricious, arbitrary or clearly erroneous. Andrew G. Nelson, Inc. v. United States (1958), 355 U.S. 554, 558, 78 S.Ct. 496, 2 L.Ed. 2d 484; Kroblin Refrigerated Xpress, Inc. v. United States (D.C.1961), 197 F. Supp. 39, 41–42; Ace Lines, Inc. v. United States (D.C.1960), 197 F.Supp. 591, 595; Malone Freight Lines v. United States (D.C.1952), 107 F.Supp. 946, 949, aff'd (1953), 344 U.S. 925, 73 S.Ct. 497, 97 L.Ed. 712.

■ In Andrew G. Nelson, Inc. v. United States, supra, the Supreme Court stated (page 558 of 355 U.S., page 499 of 78 S.Ct.):

"In ascertaining that meaning [of words in a commodity description], we are not given carte blanche; just as '[t]he precise delineation of an enterprise which seeks the protection of the "grandfather" clause has been reserved for the Commission,' * * * subsequent construction of the grandfather permit by the Commission is controlling on the courts unless clearly erroneous."

Similarly, in Malone Freight Lines v. United States, supra, the Court stated (107 F.Supp., page 949):

"Our function does not involve a de novo construction of the certificate or a re-evaluation of the undisputed facts relating to the services being performed under the pretended warrant of its authority. We are not concerned with the weight of the evidence. The scope of our review is necessarily confined to the interpretation placed by the Commission upon a certificate of its own creation. We are bound by that interpretation unless we are persuaded that it was capricious or arbitrary, that it constituted an abuse of discretion, or that it did violence to some established principle of law. It is beyond our province to consider 'the soundness of the reasoning by which its conclusions were reached.'"

It seems clear from the foregoing authorities that the courts are required to respect the findings and conclusions of the Commission in the interpretation of commodity descriptions such as are involved in the present case unless such findings "are shown to have been induced by prejudicial departure from legal standard or when such decision is arbitrary or the result of an abuse of discretion." Ace Lines, Inc. v. United States (D.C.1960), 197 F.Supp. 591, 595.

The primary question which must be determined in this case is whether the meaning which the Commission has placed upon the commodity description "structural steel" as found in plaintiff's certificates is so lacking in rational basis as to be clearly erroneous. In viewing the record made before the Commission it is readily apparent that there is

---

[1]. The list of sixteen items actually contains seventeen of the twenty items in dispute, as the Commission grouped iron and steel bolts and nuts under one heading. Steel plates were not listed among the prohibited items, but a reading of the Commission's order would indicate that this may have been an inadvertent omission.

much conflict among so-called experts as to the proper meaning to be accorded this term. A structural engineer testified for the Bureau of Inquiry and Compliance. Two consulting engineers, one of whom was also a college professor, testified for the plaintiff, as did a purchasing agent for a steel company. As to the testimony of these witnesses, the hearing examiner concluded:

"The foregoing recital of the testimony, with few exceptions, is conflicting as to whether the items set forth in the stipulation [the twenty items which have been listed above] are or are not structural steel as well as the definition of a structure and structural steel."

The Bureau's expert witness and one of the engineers testifying for the plaintiff agreed that structural steel was steel which was used in the necessary skeleton or framework of a structure. In applying this test to the twenty items in question, the Bureau's witness considered that seven of the twenty items were definitely not structural steel, that three of the items definitely were structural steel, and that the other ten items might or might not be structural steel depending upon the intended use of the item in question. The three expert witnesses who testified for the plaintiff each stated that all twenty items might properly be classified as structural steel, but in reaching this conclusion varied in their definitions of both structural steel and structure.

In considering the substance of all the testimony given as to what does or does not constitute structural steel, the hearing examiner stated as follows:

"Throughout the testimony in this proceeding there has been injected therein the question as to whether the use to which the items involved are intended to be put determines whether they would be classified as structural steel."

In answer to this question, the hearing examiner, relying upon a previous ruling of the Commission in Carroll Trucking Company, Interpretation of Certificate (1953), 62 M.C.C. 348, refused to credit any of the testimony based upon the intended use of the various items and found that plaintiff was authorized to transport only those items which were clearly considered structural steel within trade and industry usage regardless of intended use. Of the twenty categories involved, only three were found to be included in the commodity description in question. These included steel tees, zees and angles; steel channels; and steel beams.

Division One rejected to some extent the recommendations of the hearing examiner and accepted to a greater extent the testimony of the Bureau's witness that certain items could be properly classified as structural steel to the extent that these items are used in connection with a structural system. While Division One agreed with the decision reached in the Carroll case that commodity descriptions referring to "structural steel" should not be interpreted *entirely* by applying an intended use test, it did not find that there was any sound objection to considering the views of the Bureau's own witness that the trade and industry characterization of what is and what is not "structural steel" is somewhat dependent upon the intended use of the particular steel commodity in question. On this basis Division One found that plaintiff was authorized under his certificates to transport fourteen of the twenty items in question, rejecting only steel lathing and grounds, wrought pipe, steel forms for concrete construction, steel sheets, steel stampings, and steel wire.

Upon reconsideration before the entire Commission, the findings of Division One were substantially modified as not adhering strictly enough to the interpretation of the term "structural steel" made in the Carroll case and thus actually being too liberal in determining the items comprising structural steel. The Commission felt that the following test announced in Carroll was controlling (62 M.C.C., at page 351):

"[I]t is clear that under established trade and industrial usage, the term 'structural steel' refers to a group of rolled steels identified as such regardless of their intended use or application * * *."

In support of its conclusion, the Commission calls attention to the fact that Webster's New International Dictionary (2d ed. 1956) defines structural steel as "rolled steel in structural shapes," and a structural shape as "the shape of a member especially adapted to structural purposes." In addition, the Commission felt that its views were in accord with those expressed in a number of technical publications and information sources known throughout the steel industry, of which official notice was taken by the Commission (84 M.C.C., at pages 467–68). The conclusions of the entire Commission as to which items from among the twenty iron and steel items in question have an accepted trade and industrial identification as structural steel regardless of their intended use were in accord with those recommended in the first instance by the hearing examiner, although the latter had used a slightly different test in reaching his conclusions. Only steel tees, zees, and angles; steel channels; and steel beams were so included, all of which are structural shapes made by the rolling process.

■■ Considering the Commission's arguments as a whole, it cannot be said that there is no rational basis whatsoever to support its interpretation. Plaintiff urges that the Commission's decision is not supported by the record made in this case and therefore is arbitrary and capricious. Plaintiff's conclusions concerning the weight of the evidence in the present case are no doubt correct. Even the Bureau's own expert witness, who was the most favorable from the view of the Commission, did not limit the commodity description in question as strictly as did the Commission in its final order. Nonetheless, it seems well settled that in reaching its decision the Commission is not confined to the record of a particular proceeding. As stated by the Court in J. H. Nowinsky Trucking Co. v. United States (D.C. 1961), 195 F.Supp. 748, 751:

"The Commission's reliance on the decision in Cleo Crouch—Modification of Certificate, 53 M.C.C. 436 (1951), in arriving at its conclusions in the instant case does not constitute retroactive application of its rule-making power. * * * The Commission is not prohibited from referring to and incorporating an applicable prior ruling and its underlying considerations in later cases.";

and by the Court in Sims Motor Transport Lines, Inc. v. United States (D.C. 1959), 183 F.Supp. 113, 119, aff'd (1960), 362 U.S. 637, 80 S.Ct. 1076, 4 L.Ed.2d 1019:

"It is only logical that the Commission, which is appointed by law and informed by experience to interpret the certificate issued by it, should be free to draw upon its own accumulative experience in reaching a decision."

To the same effect, see Ace Lines, Inc. v. United States (D.C.1960), 197 F. Supp. 591, 596.

■ The Commission's reliance upon its prior ruling in the Carroll case in arriving at the determination which it did in this case was not improper, as long as the prior ruling is not lacking in rational basis. The present case well demonstrates that in the interpretation of a commodity description divergent views are apt to arise even among so-called experts. For this reason it seems perfectly reasonable for the Commission, after due consideration, to adopt what it considers to be a reasonable construction of a particular commodity description and to apply that construction more or less uniformly thereafter in the interpretation of like descriptions. To require that each case be decided solely upon the weight of the evidence produced in that particular proceeding

would greatly impair uniformity in the construction of such certificates. The interpretation which the Commission adopted in the Carroll case, and adheres to here, was based upon a rather complete investigation, which produced much to support the Commission's order. See 62 M.C.C., at page 350.

Plaintiff objects to the following finding of the Commission in its final report (84 M.C.C., at page 468):

"In the circumstances, and in the absence of any convincing evidence to the contrary, we must conclude that the term 'structural steel' as used in respondent's [plaintiff's] certificates has a trade and industry meaning which does not embrace the iron and steel items enumerated in our findings."

Plaintiff urges that the foregoing statement reveals the fact that the Commission failed to consider the views of his witnesses or even its own witness. It would seem that the foregoing statement only expresses the view of the Commission that the evidence presented in this case was not sufficient to cause the Commission to depart from the classification which it adopted in the Carroll case after a complete investigation. This was a choice which the Commission was free to make.

■ The plaintiff urges that the action of the Commission, in interpreting his certificates, amounts to a restriction, modification or partial revocation of those certificates in violation of Section 212(a) of the Interstate Commerce Act, 49 U.S.C.A. § 312(a). It is true that the limitations placed upon the Commission's power to modify such certificates may not be by-passed under the guise of interpretation. Andrew G. Nelson, Inc. v. United States (1958), 355 U.S. 554, 558–559, 78 S.Ct. 496, 2 L.Ed.2d 484. However, as stated by the Court in Sims Motor Transport Lines v. United States (D.C.1959), 183 F.Supp. 113, 117, aff'd (1960), 362 U.S. 637, 80 S.Ct. 1076, 4 L.Ed.2d 1019, in response to a similar argument:

"The short answer to plaintiff's first contention is that the orders plaintiff asks us to set aside take no rights from it, but merely interpret what rights it had from the beginning. It is apparent from the record that defendant Commission has not sought to diminish or modify, under guise of interpretative action, or otherwise, the operating authority of plaintiff but has rather endeavored to provide a reasonable and fair construction of the same."

In Andrew G. Nelson, Inc. v. United States, supra, the Supreme Court stated the rule as follows (pages 558–559 (footnote 4) of 355 U.S., page 499 of 78 S. Ct.):

"Commission interpretation of * * * a permit, being simply a definitive declaration of what rights existed from the very beginning under the permit, cannot be equated with modification * * * unless found to be clearly erroneous."

Since it has been determined that the report and order of the Commission in the present case is not clearly erroneous, such interpretation is but declaratory of the operating authority possessed by plaintiff from the time of acquisition of his certificates and in no way diminishes that authority from what it once was.

Plaintiff offered the testimony of Mrs. Ethel L. Burton, who owned and operated the Dependable Transfer Company, plaintiff's predecessor in interest, during the "grandfather" days. Mrs. Burton testified that prior to coming under regulation the Dependable Transfer Company transported all of the twenty groups of iron and steel items which are in issue. Plaintiff's reliance in this proceeding upon the fact that the Commission's interpretation of his certificates does not accurately reflect the "grandfather" operations performed by his predecessors is misplaced. His remedy for this deficiency, if such a deficiency exists, lies not in attacking the Commission's interpretation of his existing certificates, but rather in having the

"grandfather" proceedings reopened for modification of his operating rights. *Andrew G. Nelson, Inc. v. United States,* supra.

Plaintiff further contends that the Commission is now estopped from asserting any infraction of his operating authority. As a basis for his estoppel claim, plaintiff relies upon the fact that he and his predecessors have had on file with the Commission, at all times since coming under regulation, published tariffs listing all of the articles actually being transported by them, including all of the items which the Commission now claims are not authorized by plaintiff's certificates. It has been stipulated that tariffs containing such information have in fact been on file with the Commission. In addition, the plaintiff testified that prior to acquiring his motor carrier business from Bernard L. Klein, his immediate predecessor, in 1949, he had purposely determined just what commodities his predecessor had been transporting under his certificate bearing the commodity description "structural steel." He further testified that on the basis of this investigation he purchased the business relying upon the fact that he would be authorized to transport all of the items which his predecessor had been hauling, which included all of the twenty items in question. Plaintiff urges that the Commission's failure to object, at some earlier date, to the transportation of the items now being challenged, when considered in conjunction with plaintiff's change of position in reliance, is enough to support the claimed estoppel.

■ The Commission urges that the doctrines of estoppel or laches may not be raised against the United States or its alter ego, the Interstate Commerce Commission. Without reaching the broader question of whether the Government might perhaps be estopped under certain circumstances, it seems clear that there can be no estoppel in this instance. In *Bird Trucking Co. v. United States* (D.C.1955), 159 F.Supp. 717, 720, the Court rejected the plaintiff's

argument that the Commission was estopped because it did not object when tariffs containing the disputed items were tendered for filing, stating:

"The argument that plaintiffs are estopped to insist on their definition of 'groceries' because Mrs. Bird did not object to that term in her certificate of authority when issued, has as little merit as plaintiffs' argument that the Commission is estopped to urge its definition because the Commission did not object when the Birds and Schaefer tendered tariffs for filing with the Commission, said tariffs listing some * * * [nonauthorized] commodities. There are many thousands of tariffs filed with the Commission. It would be an almost impossible task to check every tariff tendered for filing, against the provisions of the thousands of certificates of authority which have been issued to carriers. We hold that the fact that the Commission did not object to the inclusion of certain articles in a particular commodity list included in tariffs sent to the Commission for filing, does not prevent the Commission from passing on the correctness of such classification in a proper proceeding."

To the same effect, see *Morehouse v. United States* (D.C.1961), 194 F.Supp. 940, 946, aff'd 82 S.Ct. 385; *Sims Motor Transport Lines, Inc. v. United States* (D.C.1959), 183 F.Supp. 113, 119, aff'd (1960), 362 U.S. 637, 80 S.Ct. 1076, 4 L.Ed.2d 1019.

It seems clear that the Commission was under no duty or obligation to make an exact and final determination, when the tariffs in question were filed by the plaintiff as to whether all of the numerous items listed in such tariffs were encompassed by the commodity descriptions in plaintiff's certificates. This being the case, the Commission is not estopped from later making an interpretation such as the present one which is necessary for purposes of enforcing Section 206(a) of the Act, 49 U.S.C.A. §

306(a). To hold otherwise would be to place an undue burden of cross-reference upon the Commission and would create a situation whereby the transportation of unauthorized commodities over a period of years would eventually render such transportation legal.

 As his final argument plaintiff contends that assuming that the action of the Commission in the present case is authorized by the Interstate Commerce Act, then that Act, as applied to his situation, is unconstitutional. He urges that he is deprived of both due process and equal protection of the law by the fact that the Act does not require the Commission to make, at any particular time, a final adjudication of the scope of a carrier's operating authority, thus allowing the Commission to raise this question for the first time after plaintiff, relying upon administrative nonaction, had made a substantial capital contribution toward transporting the challenged items. In many respects this argument does not differ significantly from plaintiff's arguments as to estoppel and modification and must be rejected in part for the same reasons. Also, it would appear that under the Act the plaintiff could initiate upon his own motion a proceeding before the Commission to determine the construction to be placed upon his certificates if he were at any time uncertain as to such matters. See, e. g., Carroll Trucking Company, Interpretation of Certificate (1953), 62 M.C.C. 348.

It is noticeable that during the six-year period antedating the institution of the present action the words "structural steel" assumed a somewhat accordionlike character, being expanded or contracted in scope either by the hearing examiner, Division One of the Interstate Commerce Commission, or the entire Commission, with the final contraction of the scope of those words being made by the latter. It is the order of the latter that is here being reviewed.

It is the view of this Court that it cannot be said that a factual and legal basis for the order of the Commission was lacking or that the order was arbitrary, capricious, or clearly erroneous.

It is the holding of this Court that the order of the Commission here reviewed should not be set aside or vacated.

It is hereby ordered that judgment be entered vacating the temporary restraining order heretofore entered by this Court and dismissing plaintiff's complaint with prejudice.

The foregoing memorandum opinion shall constitute the Court's findings of fact, conclusions of law, and order for judgment as provided by Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A.