**PRE-FAB TRANSIT CO., an Illinois Corporation, Plaintiff,**

v.

**UNITED STATES of America, and the Interstate Commerce Commission, Defendants.**

**Mobile Housing Carriers Conference, Inc., Intervening Defendant.**

**Civ. A. No. 3919.**

United States District Court
S. D. Illinois.
Jan. 23, 1967.

**1010**

Mack Stephenson, Springfield, Ill., Robert E. Joyner, Memphis, Tenn., for plaintiff.

Ronald Lewis, Atty. Gen., Washington, D. C., Richard E. Eagleton, U. S. Atty., Springfield, Ill., Robert W. Ginnane, Gen. Counsel, ICC, Washington, D. C., Barber & Barber, Springfield, Ill., for defendants.

Before MAJOR, Senior Circuit Judge, and JUERGENS and POOS, Chief District Judges.

MAJOR, Senior Circuit Judge.

Plaintiff, Pre-Fab Transit Company, is a common carrier by motor vehicle engaged in the transportation over various routes of commodities in interstate commerce, pursuant to authority issued by the Interstate Commerce Commission in Docket No. MC–107295, and various subs thereto.

Pre-Fab and Whitehouse Trucking, Inc. (Whitehouse) in their individual tariffs proposed to establish rates on, among others, portable buildings, to become effective September 20, 1965. Mobile Housing Carriers Conference, Inc. (Mobile Homes) was permitted to intervene in opposition to such proposed rates. A hearing was had before a Commission Examiner, which culminated in an order by the Commission adverse to Pre-Fab and Whitehouse.[1] The present action was instituted by Pre-Fab to enjoin, annul and set aside such order. Defendants, United States of America and Interstate Commerce Commission, as well as Mobile Homes, deny that plaintiff is entitled to the relief thus sought.

The case has been heard by a three-judge Court empaneled pursuant to statute (Sec. 2284(1), Title 28 U.S.Code). It is conceded by all parties and we hold that the Court has jurisdiction of the subject matter, with the power and authority to decide the issues presented.

The report and order of the Commission, Rates and Practices Review Board, was entered March 2, 1965, in its investigation and suspension Docket No. M–19957, Mobile Homes Between Points in the United States. No report was made by the Trial Examiner for reasons with which we are not now concerned. The proposed rates were on single unit mobile homes, which the Commission's order requires to be cancelled on the ground that they were for transportation services in excess of Pre-Fab's operating authorities.

Pre-Fab is the owner of numerous certificates with various commodity descriptions, two of which are illustrative:

"Prefabricated buildings, complete, knocked down, or in sections, and when transported in connection with the transportation of such buildings, component parts thereof and equipment and materials incidental to the erection and completion of such buildings," and

"Buildings, complete, knocked down, or in sections."

We think there clearly emerges from the complicated and confusing situation the single and seemingly simple issue as to whether Pre-Fab's certificates authorized it to transport "a single unit mobile home." In this connection it is pertinent to note that the term "prefabricated buildings" includes buildings of various kinds, such as mobile homes and house trailers, whether portable or not. Furthermore, the mode of transportation is not here material.

Defendants on brief, as is customary in cases of this character, cite and quote from many cases which place

---

1. Whitehouse is not a party to the present action, and we need be directly concerned only with the Commission's order as it pertains to Pre-Fab.

a severe limitation upon our scope of review. We see no point in citing or discussing such cases. We fully recognize the limitations thus imposed, but at the same time it is our duty to examine the record with a view of ascertaining if the order under attack is in accordance with law. The Commission, as well as other administrative agencies, must make findings that support its decision, and those findings must be supported by substantial evidence. Burlington Truck Lines, Inc. et al. v. United States, 371 U.S. 156, 168, 83 S.Ct. 239, 9 L.Ed.2d 207; Alabama Great Southern Railroad Co. et al. v. United States, 340 U.S. 216, 227–228, 71 S.Ct. 264, 95 L.Ed. 225; State of Florida et al. v. United States, 282 U.S. 194, 215, 51 S.Ct. 119, 75 L.Ed. 291. Courts should not be expected to speculate as to the basis for the conclusion of an administrative agency. Austin v. Jackson, 4 Cir., 353 F.2d 910, 911; Northeast Airlines, Inc. v. Civil Aeronautics Board, 1 Cir., 331 F.2d 579, 586. More important perhaps as related to the instant situation, the Commission is without power to change or modify a motor carrier's certificate under the guise of interpretative action. Nelson, Inc. v. United States, 355 U.S. 554, 558, footnote 4, 78 S.Ct. 496, 2 L.Ed.2d 484; Mitchell Bros. Truck Lines v. United States, D.C., 225 F.Supp. 755, 758; Simpson v. United States, D.C., 200 F. Supp. 372, 378, affirmed 369 U.S. 526, 82 S.Ct. 954, 8 L.Ed.2d 83.

■ Plaintiff offered the testimony of Dr. Mario Pei, a linguistic consultant and professor of philology at Columbia University, and Dr. Samuel Monson, teacher of language and composition and editor of dictionaries. There is no question but that these men were highly qualified in their respective fields. Both testified that the commodity description, "Prefabricated buildings, complete, knocked down, or in sections," related to three types of buildings, (1) a building complete, (2) a building knocked down and (3) a building in sections. Plaintiff also offered the testimony of a Mr. Kemp, concededly experienced in the field of transportation; in fact, he had been in that business for 55 years, in connection with railroads and trucks, and for 29 years prior to retirement had served as a district supervisor for the Interstate Commerce Commission. Among his numerous duties was that of examining operating authorities to determine whether the carriers were operating within their scope. This witness agreed with the language experts and testified in no uncertain terms that in his opinion the commodity description in question referred to three types of buildings, (1) a complete building, (2) a knocked down building and (3) a building in sections.

Plaintiff offered the testimony of a Mr. Frajoie, an industrial designer, and Mobile Homes (protestant) that of a Mr. Foster, its assistant managing director. Their testimony in the main had to do with the development of the industry over the past several years and is not particularly relevant at this stage of the proceeding because the sole controversy at present revolves around the meaning to be given to the language of Pre-Fab's operating authorities. No testimony was heard which contradicted that offered by plaintiff relative to the meaning of the description, "Buildings, complete, knocked down, or in sections."

The Commission made no findings as such but relied entirely upon its report in support of its order. A careful study of the report clearly reveals, we think, that it contains no findings relevant to the material issue for decision, and a study of the record reveals that no findings could be made which would support the order. This critical appraisement of the report requires its consideration in some detail.

The report, following a recitation of the nature of the proceedings, the contentions advanced by the respective parties and the issue for decision, states:

"The respondents offered the testimony of a philologist and a dictionary editor regarding the meaning of the description quoted above from Pre-Fab's authority. The import of that testimony is that *complete* fabricated

buildings can be transported under such a description, as well as those which are knocked down or in sections. That construction is joined with the contention that a mobile home or trailer is a complete prefabricated building, and there was testimony to that effect by an industrial engineer employed in the mobile-home industry. Much of the other evidence offered, for example, that regarding marketing trends in mobile home sales and the fabrication process in a mobile-home plant, is of little help in determining the issue herein."

The report next states that respondents (Pre-Fab and Whitehouse) placed in evidence the certificate of Flagstaff Trailer Sales, Inc., No. MC–125471 sub 2, in support of their theory of the case (subsequently discussed).

No further mention is made in the report relative to the testimony heard by the Examiner. The testimony of the witness Kemp, with his 55 years' experience in the transportation field including 29 years as a district supervisor for the Commission, is not mentioned. Nothing is shown as to the treatment accorded the uncontradicted testimony of the expert witnesses whose qualifications are conceded. We must assume, however, from the result reached that such testimony was either ignored or disbelieved, without any reason assigned therefor. After having considered the evidence in such a perfunctory manner, the Commission devoted the remainder of its report to the citation and discussion of three of its previous orders or decisions. Pre-Fab Transit Co., MC–107295, order dated April 29, 1952; Arco Auto Carriers, Inc., Extension–72 M.C.C. 379, decided in 1957, and National Trailer Convoy, Inc., Ext.-Portable Buildings, 91 M.C.C. 301, decided in 1962.[2]

The government on brief states, "The crux of the matter before this Court is whether there is a rational basis for the Commission's conclusion that plaintiff's commodity description 'prefabricated buildings, complete, knocked down, or in sections * * *' does not authorize the transportation of single unit mobile homes." [3] The government further states, "A reading of the Commission's report in this case discloses the clear, and understandable rationale in its disposition of the case."

With this reasoning we do not agree. On the record made there is no finding, conclusion or reason stated which furnishes any support to the order. At no place in the proceedings, including the report, was there an allegation or even a claim that the language of plaintiff's authorities was ambiguous. Neither is such a claim made on briefs in this Court. The plain fact, so we think and as the testimony conclusively shows, is that the language employed is so free from ambiguity that all who read it can understand. There is no room for the belief that when plaintiff's certificates were issued a commodity was intended other than that so plainly described. It is evident, as might be expected, that the author of such was skilled in the use of language, including the arrangement of words and punctuation so as to express what was intended. This is shown not only by the certificates here involved but by numerous others which were issued to plaintiff. Illustrative is the authority issued August 10, 1956, MC–107295 sub 42, "Prefabricated metal grain storage buildings, set up, knocked down, or in sections." Consistency with the so-called rationale of the instant case would require that this authority be restricted to storage buildings only if knocked down or in sections. This could be accomplished, however, only by the elimination of the words "set up" in the same fashion that the word "complete" has been eliminated in the instant situation. This

---

**2.** Affirmed National Trailer Convoy, Inc. v. United States, D.C., 240 F.Supp. 286, affirmed Per Curiam 382 U.S. 40, 86 S.Ct. 161, 15 L.Ed.2d 33.

**3.** In this connection, it should be kept in mind that plaintiff also was authorized to transport "Buildings, complete, knocked down, or in sections," irrespective of whether such buildings were prefabricated.

in effect and in fact constitutes a modification of the authorities issued to plaintiff, which is not permissible under the pretext of interpretation. (See authorities previously cited on this point.)

Our discussion so far has to do with the Commission's order as it pertains to the record made before the Examiner. There remains for consideration the Commission's reliance upon its previous orders, as heretofore noted.

Plaintiff on brief argues that the Commission exceeded its authority in this respect. Both sides cite cases to the point. We agree with the well considered opinion in Simpson v. United States, 200 F.Supp. 372, 377, which decided that it was not improper for the Commission to rely upon a prior order "as long as the prior ruling is not lacking in rational basis." Neither Simpson, however, nor any other case of which we are aware has held that the Commission may ignore the record made in a case and place its sole reliance upon its previous orders. If it could do so, a hearing would be a useless ceremony.

Prior to a consideration of the previous orders relied upon by the Commission, we note, as did the Commission in its order, that "The respondents [Pre-Fab and Whitehouse] also placed in evidence the certificate of Flagstaff Trailer Sales, Inc., No. MC–125471 sub 2 [issued April 1, 1965], which contains authority to transport 'Buildings, assembled, partially assembled or unassembled,' with express restrictions against the transportation of 'trailers or mobile homes * * *.' " Obviously, Flagstaff under its authority to transport "Buildings," without the restriction would have been authorized to transport trailers or mobile homes. However, as the Commission points out, the restriction in Flagstaff was inserted by stipulation of the parties. Even so, the parties must have thought the commodity description permitted the transportation of trailers and mobile homes as "Buildings"; otherwise, there would have been no reason for the restriction. The Commission by its approval of the stipulation must have been of the same opinion.

The earliest order relied upon by the Commission is described in its report as follows:

"In 1952, Pre-Fab filed a petition for interpretation of its operating authority in which it sought a determination that 'buildings, complete, knocked down, or in sections,' included authority to transport erected buildings. Division 5, by order dated April 29, 1952, in MC–107295, Pre-Fab Transit Co., Farmer City, Ill., stated that the said description 'authorizes the transportation of buildings knocked down, and buildings in sections, and does not authorize the transportation of buildings already constructed.' "

The government on brief states, "The Commission met the issue head on when it referred to plaintiff's 1952 request for interpretation of its certificates which read 'buildings, complete, knocked down, or in sections.' " We think it would be more accurate to state that the Commission by such reference side-stepped the issue. However, this order is of importance because it is the progenitor of others relied upon.

The 1952 proceedings were markedly informal and appear to have been conducted largely by correspondence between Pre-Fab and the Commission. No case is a better illustration of the flagrant manner in which the Commission altered the plain, ordinary meaning of the commodity description by ignoring the careful punctuation and eliminating the word "complete." It is important, also, to note the reason the Commission ascribed for its so-called interpretation. It found without evidence "That the words 'building, complete', are understood by manufacturers, dealers, and distributors of such buildings, as meaning all materials necessary for erecting a complete building, regardless of whether same is knocked down or in sections." In our opinion, the order is entitled to little if any weight. See Parkhill Truck Co. v. United States, D.C., 198 F.Supp. 362, 365.

The next order relied upon by the Commission in its report is described as follows:

"In 1957, Whitehouse opposed an application of another carrier to transport equipped and unequipped communication shelters from De Kalb, Ill., to points in numerous states on the ground that it had authority to perform that service and was willing to do so. Division 1, in Arco Auto Carriers, Inc., Extension—De Kalb, Ill., 72 M.C.C. 379, 381, found:

The remaining question is whether or not the described communication shelters are embraced within the commodity description 'prefabricated buildings' employed in protestant's certificates. We believe that they are. As used in certificates, the term 'prefabricated buildings' refers, among other things, to structures such as houses, tool sheds, and garages, and holders of operating authorities embracing this commodity description may transport completed buildings unless their operating authorities are otherwise restricted by such phrases as 'in section' or 'knocked down.'"

This statement furnishes no support to the Commission's order in the instant case. If the commodity described there could be transported as a complete building, as held, there would seem to be no reason why it could not be done here. Of course, it was recognized in that case that the operating authority could be restricted (as it was by stipulation of the parties in Flagstaff, previously discussed), but there is no such restriction in the commodity description in the present case. It is also significant to note that in the 1952 Pre-Fab case, as previously shown, the Commission's conclusion was based without proof upon the understanding by manufacturers, dealers, etc., while in Arco it stated that "complete buildings" may be transported

as such unless there is a restriction in their operating authorities.

The last and most relied upon case is National Trailer Convoy, Inc., Ext.-Portable Buildings, 91 M.C.C. 301, decided in 1962. There, National Trailer sought authority to transport portable buildings set up or portable building sections set up. Pre-Fab and Whitehouse were protestants, claiming that such commodities were included in the authorities which they possessed. Relative to that contention, the Commission in its report states:

"Turning next to the question raised by protestants Pre-Fab and Whitehouse as to whether the involved commodities are authorized to be transported under their respective certificates, we conclude that both carriers are authorized to transport the houses herein described that are shipped in two or more sections on the shipper's wheeled undercarriages drawn by the towing vehicle by means of a hitch ball connection, since no limitations are to be found in their certificates against this mode of transportation.[4] As pertinent Pre-Fab holds authority to transport buildings and prefabricated buildings, complete, knocked down, or in sections."

The order, after citing the Commission's 1952 order, previously discussed, which had specified that the commodity description of complete buildings does not authorize the transportation of erected buildings, continues:

"Thus, both of these carriers may transport the houses moved in two sections. *However, we conclude that the remaining structures, considered here, have acquired separate identities as trailers and cannot be considered to be prefabricated buildings as that term is used in the carriers' certificates.*"

Immediately following, the report states, "The same conclusion is warranted here." As we have shown, this con-

---

4. Of course, there is no limitation on the authority of Pre-Fab to transport houses in sections, but the Commission overlooks the fact that there is likewise no limitation on its authorty to transport complete houses.

clusion is based upon the false premise that Pre-Fab's certificate did not authorize the transportation of complete buildings, as the Commission without a hearing stated in its 1952 order. Moreover, the conclusion also appears to be contrary to the Commission's reasoning in Arco, where it recognized Pre-Fab's authority to transport erected buildings absent a restriction on such right. As we have pointed out, its commodity description contained no restriction.

On petition of National Trailer, the Commission's order under discussion was reviewed by the Court in National Trailer Convoy, Inc. v. United States, D.C., 240 F.Supp. 286 (Pre-Fab was not a party to this Court proceeding). The issue there (page 287) was whether the Commission had properly found that National Trailer's certificate to transport portable buildings did not include its sectionalized homes. The Court approved the Commission's finding in this respect. In doing so it stated, in referring to a commodity not built in single units (page 289):

> "The decision of the Commission that it is not a trailer is reasonable and not clearly erroneous. We agree with the government that a half-house in the process of delivery, though moving, is not a trailer but rather is half of a house."

In contrast, Pre-Fab has authority which describes buildings or prefabricated buildings, complete, without restriction, which it seeks to transport in single units. The conclusion of the Commission that a commodity thus described can only be transported in sections (two or more units) is, in our judgment, not tenable. Moreover, there was undisputed testimony in the case before us that a mobile home or trailer is a complete prefabricated building. As previously shown, the Commission's report acknowledges, "There was testimony to that effect by an industrial engineer employed in the mobile-home industry." It recognized but ignored such testimony.

■ Mobile Homes as intervening defendant on brief in this Court contends that Pre-Fab is making a collateral attack upon the Commission's 1952 order, which as a matter of law it is estopped from doing. The government on brief, obviously for good reasons, advances no such contention. The issue was not raised either by the government or by the intervening defendant in their answers to Pre-Fab's petition for review. The issue was mentioned only in a perfunctory manner in the hearing before the Examiner. The Commission made no mention of it in its report. More than that, in view of what we have shown as to the informal proceeding culminating in the order of 1952, without a hearing and without proof, it is our view that the order entered at that time cannot be utilized as a basis for collateral estoppel. It is inferable that the Commission so recognized, by conducting a hearing and rendering its report without mentioning the issue.

■ In our view, for reasons shown, the Commission's reliance upon its prior orders, in the language of Simpson v. United States, 200 F.Supp. 372, 377 (previously quoted), is "lacking in rational basis." Courts have freely and properly ascribed to the Commission an expertise in the interpretation and construction of the certificates which it issues. We think it should be credited with the same acumen in the language employed in the drafting of its certificates.

■ Neither in this proceeding nor in the previous proceedings relied upon has there been even a hint, much less a finding, that Pre-Fab's commodity description was other than plain, ordinary language, free from all ambiguity. The words employed meant what they said and said what was meant. Pertinent to the commodity descriptions involved is the statement in Nelson, Inc. v. United States et al., 355 U.S. 554, 557, 78 S.Ct. 496, 498:

> " * * * that the plain meaning of words in a commodity description is controlling in the absence of ambiguity or specialized usage in the trade. Neither of the parties believes the description here patently ambiguous, nor do

we consider it to be such. Moreover, appellant is unwilling to say that the instant description is a term of art, while the Commission specifically asserts that it is not. Consequently, the ordinary meaning of the words used in the permit is determinative."

In our judgment, and we so hold, the Commission's order on the record made in this case, giving due weight to its previous orders, is clearly erroneous. It is, therefore, annulled and set aside, leaving to the Commission any further action which it may deem appropriate.