**PRE–FAB TRANSIT COMPANY, an Illinois corporation, Plaintiff,**

v.

**UNITED STATES of America and the Interstate Commerce Commission, Defendants.**

**Civ. A. No. 4592.**

United States District Court, S. D. Illinois.

Jan. 22, 1971.

Robert B. Oxtoby, Mack Stephenson, Springfield, Ill., Robert E. Joyner, Memphis, Tenn., for plaintiff.

Frank J. Violanti, U. S. Atty., Springfield, Ill., Fritz R. Kahn, Gen. Counsel, I.C.C., Washington,.D. C., for the United States.

Bryce Rea, Jr., Leonard A. Jaskiewicz, William J. Lippman, Washington, D. C., Karl K. Hoagland, Alton, Ill., Mitchell King, Jr., Greenville, S. C., for intervening defendants Mobile Housing Carriers, Conference Inc., Transit Homes, Inc., Morgan Drive Away, Inc., and Nat'l Trailer Convoy, Inc.

Before KERNER, Circuit Judge, POOS, Chief District Judge, and MORGAN, District Judge.

## DECISION AND ORDER

ROBERT D. MORGAN, District Judge.

This cause is before the court upon a complaint to review an order of the Interstate Commerce Commission cancelling plaintiff's proposed tariff schedules for the transportation of single-unit mobile homes.

Plaintiff, Pre-Fab Transit Company, is a common carrier by motor vehicle engaged in the transportation of commodities in interstate commerce pursuant to authority granted to it by the Commission. Under that grant of authority, plaintiff is the owner of several certificates of convenience and necessity, the commodity descriptions of which are encompassed within the descriptions of two of such certificates as follows:

> "Prefabricated buildings, complete, knocked down, or in sections, and where transported in connection with the transportation of such buildings, component parts thereof and equipment and materials incidental to the erection and completion of such buildings,"

and,

> "Buildings, complete, knocked down, or in sections."

Plaintiff filed tariffs with the Commission, to become effective September 20, 1965, which included rates for the transportation of single-unit mobile homes. Several carriers engaged in the business of mobile home transportation were permitted to intervene in opposition to that tariff insofar as it established rates for the transporting of mobile homes.[1] The Commission ruled that the proposed transportation of single-unit mobile homes exceeded plaintiff's authority. It, accordingly, entered an order cancelling plaintiff's tariff to the extent that it fixed rates for such transportation.

A previous three-judge court set aside that order. Pre-Fab Transit Co. v. United States, et al., S.D.Ill., 262 F.Supp. 1009 (1967).

Subsequent to that decision, further extensive hearings were held before a Commission examiner. Those hearings culminated in a recommendation that a new order enter cancelling plaintiff's tariff schedules insofar as they fixed rates for the transportation of single-unit mobile homes. On April 28, 1970, the Commission approved the report of its examiner and ordered cancellation of such tariff schedules, effective June 15, 1970. Mobile Homes Between Points in the United States, Inv. & Susp. Docket No. M–19957.

Plaintiff filed the instant complaint of June 10, 1970. Enforcement of the order was stayed pending disposition of the suit by this three-judge court. Jurisdiction is founded upon the provisions of 28 U.S.C. §§ 2321ff and 2284.

■ The suggestion implicit in plaintiff's argument that the order contravenes the prior three-judge court's decision is considered without merit. That

court held that the uncontradicted evidence in the record then before it required the finding that a single-unit mobile home[2] is a "complete building," a commodity embraced within the commodity descriptions of plaintiff's operating authority. The court further found that the order before it was based upon the Commission's interpretation and application of its own prior orders, to the exclusion of the record in the case before it. Pre-Fab Transit Co. v. United States, et al., 262 F.Supp. at 1011–1012, 1013. It was in that context that the previous Commission order was set aside, "leaving to the Commission any further action which it may deem appropriate." 262 F.Supp. at 1016.

■ Subsequent action of the Commission was further extensive hearings, productive of a voluminous additional transcript of testimony and documentary exhibits. That procedure was proper. A new record is now presented to the court for review. Our decision must rest upon a determination whether that record, as now constituted, substantially supports the findings and the new order which the Commission has now made and entered. Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962); Pre-Fab Transit Co. v. United States, *supra* 262 F.Supp. at 1011.

The single issue before this court is whether substantial evidence supports the Commission's findings and, in turn, whether those findings support the order entered.

■ Although it may be said that the Commission did find, upon conflicting evidence, that a single-unit mobile home is not a building, this seems purely an exercise in semantics, and the Com-

---

1. The intervening defendants are Mobile Housing Carriers Conference, Inc., Transit Homes, Inc., Morgan Drive Away, Inc., and National Trailer Convoy, Inc.

2. The single-unit mobile home is a factory-produced housing unit, produced with

variable dimensions ranging up to fourteen feet in width and in excess of fifty feet in length. Such units are permanently mounted upon their own wheeled undercarriages and equipped to be drawn by a vehicle by means of a hitch-ball coupler.

mission framed the issue before it as follows:

" * * * The issue here is not whether a mobile home is a building but rather, *whether under the Commission's long-standing regulatory scheme* the commodity descriptions 'buildings' or 'prefabricated buildings' embrace single-unit mobile homes." (Emphasis by Commission)

The Commission concluded that those commodity descriptions did not embrace mobile homes, basing its conclusion upon findings of an industrial and regulatory scheme which drew a distinction between mobile housing, as exemplified by the house trailer, and prefabricated, sectionalized buildings designed for permanent erection at the site of their delivery. The Commission therefore concluded that plaintiff's authority to transport buildings and prefabricated buildings does not include the authority to transport mobile homes.[3]

Plaintiff's position in opposition to the order, refined to essentials, is that the distinction drawn by the Commission has no rational basis in the light of modern developments in the field of low-cost housing. It contends that the mobile home is in every sense of the word a building, and, further, that the use of the mobile home in fixed locations as a housing unit has erased all rational distinction between such units and conventional prefabricated buildings.

Philologically, the premise may be correct. In its designed use, the mobile home is generally immobilized upon delivery, frequently upon some type of permanently placed foundation. However, the premise begs the question whether the order of the Commission rests upon substantial evidence.

Substantial evidence does support the Commission's finding that there is a valid distinction between the term "mobile home," on the one hand, and the term "prefabricated building," on the other.

Historically, two separate industries developed, and overlap is still minimal. One was the industry engaged in the production of factory-built, sectionalized buildings, designed to be erected upon on-site foundations at the place of delivery. The other was the trailer industry engaged in the production of factory-built, self-contained units mounted upon a permanent-wheeled undercarriage and designed to be drawn behind passenger vehicles by means of a hitch-ball coupler. As the industries developed, the products of the first became known as prefabricated buildings. Those of the second became known as trailers or house trailers. In the course of industrial development, the single-unit mobile home was the progeny of the house trailer industry, its construction, configuration and mobile means closely paralleling those of the house trailer. Though the size of the present-day mobile home prohibits the ready mobility possessed by its progenitor, and though most often its intended use is as a place of permanent residence, the evidence supports the Commission's finding that an industry-recognized distinction between mobile homes and prefabricated buildings still exists in fact.

*Commission practice paralleled that industrial distinction.* In certification of carriers, the Commission employed the commodity descriptions "buildings" and "prefabricated buildings" as excluding the house trailer segment of the industry and the commodity description "trailers" as excluding the prefabricated-building segment. Such certificates were issued for each segment of the industry as were deemed required by shipper convenience and necessity. A regulatory scheme de-

---

3. In a brief dissenting opinion, two commissioners stated the view that the historical distinction relied upon by the majority was no longer valid. Their position was that, because of the size of modern mobile homes and the fact that most such units are permanently immobilized upon delivery, there could be no rational distinction between the single-unit mobile home and prefabricated buildings.

veloped, with the object of satisfying the transportation needs of each of those industrial segments and effecting a balance as between competing carriers. The Commission said of such balancing of competing needs and carrier facilities:

" * * * [W]e seek in each case to grant authority which, on the one hand, is not so restrictive as to unnecessarily hamstring the operations of the applicant vis-a-vis his supporting shippers, but, on the other hand, is not so broad as to jeopardize unduly the operations of competing carriers, absent a public need for additional service. Admittedly, it is impossible to foresee all the conflicts that may later arise * * * because of new commodities which did not exist at the time of the grant and so could not have been considered. In such circumstances, resort must be had to interpretations that take into account a large number of factors, including the broad regulatory scheme, the intent of the original grant, industry usage, dictionary definitions, and the competitive situations in the industries involved. * * * "

The hearings in this case encompassed evidence as to all of those factors which the Commission recited as bearing upon the question of interpretation of the commodity descriptions in plaintiff's certificates. The most that can be said for plaintiff's position is that there was disagreement among expert and industry witnesses as to the proper classification of the single-unit mobile home. That factor simply created a conflict in the evidence which it was the province of the Commission, not of this court, to resolve.[4]

Finally, plaintiff argues that the Commission went behind its certificates under the guise of interpretation of commodity descriptions. Such action is contended to be impermissible because the commodity descriptions of plaintiff's certificates are clear and unambiguous.

■ That premise is faulty. The power of the Commission to interpret certificates which it has issued in the light of its own fixed standards and industry usage has been recognized. Nelson, Inc. v. United States, 355 U.S. 554, 557–558, 78 S.Ct. 496, 2 L.Ed.2d 484 (1958); U.S.A.C. Transport, Inc. v. United States, D.Del., 235 F.Supp. 689, 692 (1964), aff'd per curiam 380 U.S. 450, 85 S.Ct. 1103, 14 L.Ed.2d 151. What the Commission has done in this case is to interpret the language of plaintiff's original grants of authority with reference to a long-existing regulatory scheme and evidence of industry usage. Its action in that regard was proper.

The restrictive position which plaintiff espouses in that context would constitute an unreasonable proscription upon the Commission's ability to perform its assigned task of formulating and administering a feasible scheme of control over transportation. The Commission aptly stated in this case, in the context of its delineation of the factors bearing upon commodity description interpretation:

"To limit us to literal or academic interpretations of our own commodity descriptions would deprive us of an essential discretionary power and destroy the complex regulatory scheme, carefully constructed over many years, by which a delicate competitive balance is maintained in the transportation industry under our jurisdiction."

■ Plaintiff's argument grounded upon the "double-wide" commodity has no bearing upon the issue here presented.

Certain manufacturers now build a commodity known in the trade as

---

4. In addition to the evidentiary facts to which reference has hereinabove been made, the evidence shows that mobile homes are frequently treated as vehicles and required to be licensed as such, and that they are often subjected to zoning and financing restrictions and to tax classifications different from those related to prefabricated or other conventional buildings.

"double-wides," separate halves of a structure, each comparable in size and configuration to the mobile home, which are joined together at the delivery site to form a complete home. Each half is mounted upon a detachable, wheeled undercarriage drawn by means of a hitch-ball coupler. Upon delivery, the undercarriage is detached and returned to the shipper for reuse.

Plaintiff has authority to transport double-wides by virtue of a previous Commission decision holding that such units are prefabricated buildings, not trailers. National Trailer Convoy, Inc., etc., 91 M.C.C. 301, aff'd, National Trailer Convoy, Inc. v. United States, N.D. Okl., 240 F.Supp. 286 (1965) aff'd per curiam, 382 U.S. 40, 86 S.Ct. 161, 15 L.Ed.2d 33. Rejecting the argument that each double-wide unit was a trailer, the Commission there said that each was a half of a house.

We find no inconsistency between the *National* order and this. The only similarity between the two commodities is the means by which they are transported. Of greatest significance is the fact that in each case the Commission exercised its power of decision upon a specific record then before it.

We have considered all arguments of the parties and the authorities cited by them. We find the conclusion inescapable that the order of the Commission is founded upon substantial evidence.

The temporary restraining order heretofore entered is dissolved, the complaint is dismissed and the Commission's order is sustained.

POOS, Chief District Judge (dissenting).

After careful consideration of the briefs submitted and oral argument, and of the present majority opinion of this Court, it is my opinion that the majority of this Court has reached an incorrect result. Therefore, I must respectfully record this dissent.

The evidence presented to this Court is merely cumulative of the evidence presented in Pre-Fab Transit Co. v. United States of America and the Interstate Commerce Commission, 262 F. Supp. 1009 (1967), where the Court there set aside an order of the Commission which prohibited Pre-Fab Company from transporting mobile homes under its present certificate. I adhere to the views and propositions expressed therein, and in order not to unduly burden the length of this dissent, I incorporate that decision herein by reference.

Pre-Fab Transit Company is the owner of several certificates of convenience and necessity, two of which are as follows:

"Prefabricated buildings, complete, knocked down, or in sections, and where transported in connection with the transportation of such buildings, component parts thereof and equipment and materials incidental to the erection and completion of such buildings,"

and,

"Buildings, complete, knocked down, or in sections."

The Commission is operating under the basic premise that the determination of what commodities are authorized to be transported by a certificate, such as the above, is to be left largely to the Commission's discretion, and the construction thereof is to be controlling unless clearly erroneous, arbitrary, an abuse of discretion, or in contravention of some established principle of law. Service Storage & Transfer Co. v. Virginia, 359 U.S. 171, 177, 79 S.Ct. 714, 3 L.Ed.2d 717 (1959); Nelson, Inc. v. United States, 355 U.S. 554, 558, 78 S. Ct. 496, 2 L.Ed.2d 484 (1958); J. B. Acton, Inc. v. United States, D.C., 221 F.Supp. 174, 177 affirmed per curiam, 376 U.S. 779, 84 S.Ct. 1133, 12 L.Ed.2d 83 (1964); Whitehouse Trucking, Inc. v. United States, D.C., 261 F.Supp. 9, 11 (1966), affirmed per curiam, 388 U.S. 453, 87 S.Ct. 2111, 18 L.Ed.2d 1317.

This premise is the standard upon which the regulatory agencies must operate in order to deal with various matters expeditiously. However, in this instance, the construction given to the Pre-Fab certificates by the Commission as not authorizing the transportation of single unit mobile homes is arbitrary, and clearly erroneous, and as a result thereof constitutes an abuse of discretion.

The present decision of the Commission is derived from the original distinction between authority to transport buildings as against house trailers and similar trailers which has been made since the early days of Federal Motor Carrier Regulation. Mobile Homes Between Points in the United States, 337 ICC 121 (1970).

Out of this distinction there evolved two basic commodity descriptions (although there have been variations of each) designed to describe the operations of the two types of carriers. One authorized the transportation of "trailers designed to be drawn by automobiles", while the other authorized the transportation of "prefabricated buildings, complete, knocked down, or in sections." Mobile Homes Between Points in the United States, 333 ICC 121 (1970).

The Commission points out that its decision is based upon an early distinction in the primal years of the motor carrier industry. However, the Commission goes on to say that there have been variations of both commodities throughout the years, but yet the Commission remains steadfast in continuing this early distinction. The Commission appears to make nothing of the fact that a new era of the mobile home has emerged. The present day mobile home is not the house trailer that once existed in the early stages of the industry. A mobile home cannot be either safely or lawfully drawn over a highway by an automobile, a fact fully recognized by more recent Commission decisions, even though its stereotyped description as "trailers, designed to be drawn behind passenger vehicles" has never been changed as a result. The failure of the Commission to take these facts into consideration is in itself a blatant abuse of its discretion.

The Commission's determination that Pre-Fab's certificates do not authorize it to transport mobile homes is not dependent upon whether they are, or are not buildings. There is no rational basis upon which the Commission bases its decision except to ostensibly protect the historical development by the Commission of an antiquated transportation scheme, and to limit Pre-Fab to what the Commission believes to be its properly awarded segment of that scheme.

In this regard I must agree with Commissioners Walrath and Deason who have dissented in Mobile Homes Between Points in the United States, 337 ICC 132, 133 (1970), wherein it was stated that mobile homes are immobilized upon delivery. Most are too wide to be practical for use as conventional trailers. Indeed, when they are towed commercially, mobile homes frequently are placarded "wide load", and in some states are required to have special permits and must be escorted by separate vehicles.

In light of these circumstances, I think a common sense approach is to find that mobile homes may be transported by carriers holding authority to transport buildings, thereby recognizing the pronounced trend toward instant semi-permanent, low-cost housing which has occurred within the prefabricating industry in recent years.

Pre-Fab, under its present certificate, is authorized to transport a 'doublewide', which is a structure twice the size of a single unit mobile home and transported in two halves. The resultant interpretation of the Commission's decision is that Pre-Fab may transport one-half of a mobile home but not an entire single unit mobile home. The logic in this reasoning is beyond my comprehension. If the

**1154**

Commission desires to continue its early distinction, why would it now permit Pre-Fab to transport one-half of a mobile home, but not the entire mobile home itself? Buildings, complete, knocked down, or in sections, would seem to include a complete mobile home in addition to a section of a mobile but the Commission fails to recognize this fact.

In Pre-Fab Transit Company v. United States, 262 F.Supp. 1015 (1967) which dealt with the identical issue presently before this Court, it is stated that neither in this proceeding nor in the previous proceedings relied upon, has there been even a hint, much less a finding, that Pre-Fab's commodity description was other than plain, ordinary language, free from all ambiguity. The words employed meant what they said, and said what they meant. Pertinent to the commodity descriptions involved is the statement in Nelson, Inc. v. United States et al., 355 U.S. 554, 557, 78 S.Ct. 496, 498, 2 L.Ed.2d 484:

> " * * * that the plain meaning of words in a commodity description is controlling in the absence of ambiguity or specialized usage in the trade. Neither of the parties believes the description here patently ambiguous, nor do we consider it to be such. Moreover, appellant is unwilling to say that the instant description is a term of art, while the Commission specifically asserts that it is not. Consequently, the ordinary meaning of the words used in the permit is determinative."

In my opinion, the certificates owned by Pre-Fab Transit Company are free from any ambiguity whatsoever, and these certificates should include therein the commodity description of a single unit mobile home.

Accordingly, I would hold the order of the Commission to be clearly erroneous and therefore should be annulled and set aside.